WISCONSIN & ARKANSAS LUMBER CO. v. STANDRIDGE.

Opinion delivered February 25, 1918.

1. MASTER AND SERVANT—INJURY TO SERVANT—SAFE TOOLS AND AP-PLIANCES—INSTRUCTION.—In an action for damages for personal injuries, the court charged the jury, "* * * it is the duty of the master to use *reasonable* care to provide the servant with reasonably safe tools and appliances with which to perform his work, and to use reasonable care to provide the servant with a reasonably safe place in which to perform his work. * * *" *Held*, the instruction was not erroneous because of the use of the word "reasonable" instead of "ordinary."

2. MASTER AND SERVANT—INJURY TO SERVANT—DAMAGES—DIMIN-ISHED EARNING CAPACITY.—In an action for damages resulting from negligence, *held*, that the jury might consider plaintiff's diminished earning capacity, in arriving at the damages, and that the impairment of plaintiff's eyesight alone is sufficient to warrant the inference that his earning capacity has been decreased.

3. DAMAGES—AMOUNT—PERSONAL INJURIES.—In a personal injury action it appeared that plaintiff endured great pain and still suffers pain in his neck and head as a result of the injury, that he partially lost his sight and is compelled to wear glasses, that as a result of the injury he can not continuously follow his trade at which he formerly earned $2.50 per day, and that there is a slight disfigurement of his nose, which gives him a peculiar appearance. *Held*, under these facts, a verdict for $2,000 was not excessive.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; affirmed.

*T. D. Wynne*, for appellant.

1.   The verdict is contrary to the law and the evidence.   There was no negligence, but there was contributory negligence by appellee.

2.   The court erred in its instructions.   97 Ark. 180; 129 Ark. 111; 104 *Id.* 67; 70 *Id.* 441; 76 *Id.* 468; 88 *Id.* 454; 117 *Id.* 193; 90 *Id.* 278; 97 *Id.* 358.

3.   The verdict is excessive.

*Henry Means* and *Harry H. Myers,* for appellee.

1.   The verdict is supported by the evidence.   67 Ark. 537; 25 *Id.* 474; 49 *Id.* 381; 51 *Id.* 467; 120 *Id.* 206.

2.   There is no error in the instructions.   16 Ark. 308; 74 *Id.* 381; 75 *Id.* 261; 98 *Id.* 363; 92 *Id.* 143; 56 *Id.* 196.

3.   The damages are not excessive.   1 Suth. Dam. 113-118; 13 How. 344; 60 Ark. 151; Jones on Ev., § § 393-8, 401-5.

HUMPHREYS, J.   Appellee instituted suit in the Hot Spring Circuit Court to recover damages for an injury received on the 31st day of May, 1916, while assisting appellant's master mechanic, or foreman, in putting a spring hanger on the side of appellant's locomotive.   The negligence charged consisted in the failure of appellant to furnish proper materials and tools with which, and a safe place in which, to work.

Appellant answered, denying specifically the negligence alleged, and, by way of further defense, pleaded contributory negligence and assumed risk by appellee.

The cause was submitted to a jury upon the pleadings, evidence and instructions of the court.   The jury returned a verdict in favor of appellee in the sum of $2,000, and a judgment was rendered against appellant for that amount.   An appeal has been prosecuted to this court from that judgment.

The evidence, in substance, disclosed that appellee and other employees were putting a spring hanger on the side of appellant's locomotive under the supervision and direction of Tom Garrett, its foreman or master mechanic, at the time the injury occurred, about 10 o'clock at night,

May 31, 1916. Garrett had a light in his hand and gave directions to the men. A spring puller, commonly known as a crowfoot or U-bolt, was used in connection with the iron prize pole to pull the spring down to its place. The spring puller was in the shape of a horseshoe, the heels pointing backward and down so as to form a hook in the shape of a half square. This was hooked over the spring, which allowed the loop to drop down below the spring. This particular spring puller was made for a larger locomotive than the one being repaired, and consequently the loop extended down below the bottom rail of the frame, so it became necessary to place a piece of iron in the loop below the prize pole in order to furnish the necessary leverage to pull the spring down in place. A block of iron three by four inches was placed in the loop by the foreman to serve as a fulcrum. The spring did not come to place when the men pulled down on the prize pole the first time. Just before they pulled the prize pole down the second time Mr. Wheat exclaimed, "Lookout, that's dangerous!" Mr. Garrett responded, "No, it ain't; it's all right;" and directed the men to pull down on the prize pole their very best. When they did that the fulcrum flew out and struck appellee with great force on the nose and rendered him unconscious for a time.

The evidence is conflicting as to whether appellee ever did such work before, or whether he was familiar with the dangers incident to the work; and also conflicting as to the nature and extent of the injury. There was evidence tending to show that appellee's nose and jawbone were broken, which resulted in a slight permanent disfigurement and a partial loss of eyesight. There was, on the contrary, evidence tending to show no disfigurement and little or no injury to the eyesight.

The evidence is also conflicting as to the effect the injury had on appellee's earning capacity. He returned to work in about two weeks, but, according to his evidence, had to give up blacksmithing to a large extent and do farm work instead.

Appellee suffered great pain and testified at the time of the trial that his head and neck hurt him all the time as a result of the injury.

(1) It is insisted that the court erred in giving instruction No. 1 for the reason, it is said, that it exacted of appellant the absolute duty to furnish reasonably safe tools with which, and a reasonably safe place in which, to work; when the law only exacts that a master shall exercise ordinary care to furnish reasonably safe tools with which, and a reasonably safe place in which, to work. That portion of the instruction said to constitute error is as follows:

"* * * It is the duty of the master to use *reasonable* care to provide the servant with reasonably safe tools and appliances with which to perform his work, and to use reasonable care to provide the servant with a reasonably safe place in which to perform his work. * * *" The objection is directed to the use of the word "reasonable" instead of the word "ordinary." We think the word "ordinary" is preferable in instructions of this character, but the difference in the meaning of the two words, when used in connection with the word "care," is so slight that it is hardly appreciable. Bouvier's Law Dictionary (Rawle's Third Revision), vol. 3, pp. 2426 and 2818. Appellant is in error in its contention that instruction No. 1 is erroneous under the ruling in the case of *Holmes* v. *Bluff City Lumber Company,* 97 Ark. 180. The language condemned in that case was as follows: "It was the duty of the defendant to furnish plaintiff a reasonably safe place to work," and, if "plaintiff while engaged at work for defendant was not given a reasonably safe place in which to perform his work," etc., defendant would be liable. This language did place upon the master the duty of absolutely furnishing safe tools and a safe place, while the instruction in the instant case only required appellant to exercise reasonable care in furnishing reasonably safe tools with which, and a reasonably safe place in which to work. The case cited in support of appellant's contention is not in point.

. It is next insisted that instructions Nos. 2, 3 and 5 were not predicated upon any evidence in the case, and, therefore, abstract. We have examined the evidence carefully and find sufficient evidence to warrant the giving of each instruction.

(2) It is insisted that the court erred in instructing the jury that they might consider the decrease in the earning capacity of appellee, if any, in arriving at its verdict; for the reason, it is said, that the evidence fails to show that appellee's earning capacity was, or would be, diminished in the future. There was evidence tending to show that appellee was compelled to give up in a large measure the trade of blacksmithing and that his eyesight was impaired. The impairment of one's eyesight alone is sufficient to warrant the inference that his earning capacity has been decreased.

(3) It is insisted that the verdict of $2,000 is excessive. The evidence tends to show that appellee endured great pain and still suffers pain in his neck and head as a result of the injury; that he partially lost his sight and is compelled to wear glasses; that, as a result of the injury, he can not continuously follow his trade at which he formerly earned $2.50 per day; that there is a slight disfigurement of the nose which gives him a peculiar appearance. We can not agree with appellant that $2,000 is an unwarranted award under the evidence in this case.

No error appearing in the record, the judgment is affirmed.