HENSHAW *v.* HENDERSON.

5-2467                                          359 S. W. 2d 436

Opinion delivered May 21, 1962.

[Rehearing denied September 10, 1962.]

*McMillan & McMillan & Otis H. Turner,* for appellant.

*Cole & Scott* and *Wiley Smith,* for appellee.

NEILL BOHLINGER, Associate Justice. Early in the evening of April 25, 1960, the appellant, Joe Wilburn Henshaw, called at the apartment of Miss Sarah Overturf in the City of Hot Springs with the intention of having Miss Overturf accompany him for an automobile ride.

Sharing the apartment with Miss Overturf was Miss Peggy Henderson. Miss Henderson did not wish to be left alone in the apartment and it was decided that she would accompany the appellant and Miss Overturf. These three parties, in the appellant's new Chevrolet convertible, drove up Central Avenue in Hot Springs toward the race track. At Truman's Tavern the appellant got out and went in by himself and came out with a can of beer. He then drove out the Golf Links Road to a tourist court where it had been planned they would meet a married couple who were friends of both the appellant and Miss Overturf but it was found that the couple was not in.

Either at that time or shortly before, and the time is immaterial, it was suggested that they would drive to Malvern to get a young man of Miss Peggy Henderson's acquaintance who was to be her escort for the evening. Upon leaving the tourist court it appears that the car progressed a short distance when it struck a Plymouth automobile parked near the pavement. The impact in-

flicted minor damage to the left rear of the Plymouth automobile.

At that point the appellant, as driver of the car, seems to have lost control of the vehicle which partly skidded across the road in a left-hand direction and traveled about 190 feet where it struck a large oak tree. Either at the point of impact or shortly prior thereto the two young ladies were thrown from the car and the force of the impact was such that the Chevrolet convertible was wrecked and subsequently caught fire. Miss Henderson died as a result of the accident and D. C. Henderson, as special administrator of the estate of Peggy Henderson, brought this action in the Circuit Court of Hot Spring County to recover damages for the wrongful death of Miss Henderson.

The case was duly tried before a jury which returned a verdict of $1,750.00 for the estate of Peggy Henderson; the sum of $2,500.00 for Mrs. D. C. Henderson; and $2,500.00 for D. C. Henderson, the Hendersons being the next of kin of the deceased.

Judgment was duly entered and to reverse that judgment the appellant brings this appeal.

The record clearly establishes that both Miss Overturf and Miss Henderson were guests in the car driven by the appellant. Therefore the allegations of the appellee must be viewed in the light of our guest statute. Our guest statute, Ark. Stats. 75-913 also [75-915], is as follows:

"Action by guest prohibited except in case of wilful negligence.—No person transported as a guest in any automotive vehicle upon the public highways or in aircraft being flown in the air, or while upon the ground, shall have a cause of action against the owner or operator of such vehicle, or aircraft, for damage on account of any injury, death or loss occasioned by the operation of such automotive vehicle or aircraft unless such vehicle or aircraft was wilfully and wantonly operated in disregard of the rights of the others. [Acts 1935, No. 61, § 1,

p. 135; Pope's Dig., § 1302; Acts 1955, No. 175, § 1, p. 406.]''

In establishing the rule as to guests in the case of *Simms* v. *Tingle,* 232 Ark. 239, 335 S. W. 2d 449, we said:

"The general rule for determining the status of a passenger in an automobile is that if the transportation or carriage in its direct operation confers a benefit only on the person to whom the ride is given and no benefits other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes (Ark. Stats. § 75-913 to 75-915), but if the carriage tends to the promotion of the mutual interests of both the passenger and the driver for their common benefit, or if the carriage is primarily for the attainment of some objective or purpose of the operator, the passenger is not a guest. *Ward* v. *George,* 195 Ark. 216, 112 S. W. 2d 30.''

The status being that of guests, it must be established that the appellant operated the automobile in a wilful and wanton manner in disregard of the rights of others.

In order to establish wilful and wanton negligence on the part of the appellant, appellee has presented some testimony in regard to beer drinking by the appellant and testimony as to the speed at which the appellant operated his automobile. These are matters for the jury's consideration on a retrial of this cause since we find error on which this present cause must be reversed and hence we do not find it necessary to go further into the points thus presented.

It appears from the record that the appellee presented as a witness Glen Minton, a trooper for the Arkansas State Police. Mr. Minton was presented as an expert with thirteen years service with the State Police.

Mr. Minton was permitted to testify, over the objection of the appellant, that he was called to the scene of the accident shortly after it occurred. He described in

detail the position of the Plymouth automobile and the Chevrolet convertible; the point where the two girls were found; and the position of the appellant who was unconscious on the front seat of his car and was further permitted to testify that on the morning of the trial he had taken his car, a 1960 Chevrolet, from a dead stop and accelerated as fast as possible for two-tenths of a mile [this being the distance between the motel and the location of the Plymouth that was struck] and that he attained a speed of 75 miles per hour; that it was one of the requirements of his position to estimate the speed of vehicles involved in a collision and that viewing the distance the Chevrolet convertible was out of control and the severity of the impact, he thought the Chevrolet convertible was traveling 80 miles per hour.

Appellant properly objected to this line of testimony. There is no need to resort to expert opinion in the absence of evidence to indicate that it was beyond the jury's ability to understand the facts and draw its own conclusion.

In the case of *Conway* v. *Hudspeth,* 229 Ark. 735, 318 S. W. 2d 137, we said:

"We do not agree with the appellants' contention that the proffered testimony was admissible as the opinion of an expert. It has been said that the courts look with disfavor upon attempts to reconstruct traffic accidents by means of expert testimony, owing to the impossibility of establishing with certainty the many factors that must be taken into consideration. *Moniz* v. *Bettencourt,* 24 Cal. App. 2nd 718, 76 P. 2d 535. In the case at hand the officer was not asked to describe every physical fact that he had seen and then to explain his deductions, in the manner that ballistic experts often explain their conclusion that a certain weapon fired a certain bullet. Here the officer was asked his opinion on the basis of the position of the vehicles, the damage to them, 'and other physical evidence found at the scene.' In the absence of anything to inicate that it was beyond the jurors' ability to understand the facts and draw their

own conclusions, there was no need to resort to expert opinion. *Mo. Pac. R. Co.* v. *Barry,* 172 Ark. 729, 290 S. W. 942.''

The witness' test was made with a car other than the one involved in the accident and there is no showing that his test was made under the same conditions that prevailed at the time and at the place of the accident. The testimony of a policeman as an expert carries great weight but when it is predicated on conditions different than those under scrutiny it is inadmissible.

The objection of the appellant was timely and should have been sustained. For error in overruling the objection this cause is reversed and remanded for further proceedings not inconsistent herewith.

HARRIS, C. J., SMITH & ROBINSON, JJ., dissent.

CARLETON HARRIS, Chief Justice (Dissenting). While I have every sympathy for the family of the unfortunate young lady who was killed in the accident, I am forced to dissent to the holding of the Majority, for I think this holding emasculates the law as set out in numerous prior holdings of this Court. The Majority say that a jury question was made because of the combination of evidence relative to speed and intoxication. Let us examine first the evidence as to intoxication.

(1) Henshaw himself testified that he had two cans of beer at noon; one can in the early part of the afternoon, and a portion of a can after he picked up his date that night.

(2) Sarah Overturf (now Ashley) testified that she could smell alcohol when he came to get her for the date. On leaving her premises to go to the car, she stated, ''He kinda stumbled once.'' He drank part of a can of beer after she was with him.

(3) Mrs. Delbert Hughes, who arranged the date for Henshaw with Miss Overturf, went with him to her apartment about 5:30 or 6 p. m., testified that she noticed nothing unusual about the way he walked, nor any-

thing different about the way he handled the automobile while driving, and smelled nothing on his breath while with him.

(4) Glen Minton, trooper with the Arkansas State Police, who went to the scene of the accident, testified that he could smell alcohol on Henshaw's breath, but that it had a "sour" smell, indicating that the alcohol had been consumed sometime before, rather than recently.[1]

No one testified that Henshaw was intoxicated.

Let us next examine the evidence relative to speed.

(1) Dayton Thornton, a mechanic, who was the only eye witness, was traveling the highway in his car with his wife and family. Mr. Thornton observed the entire occurrence, and estimated the speed of Henshaw's automobile to be somewhat between 50 and 65 mph.; he would say the car was not exceeding 65 mph.

(2) Glen Minton, heretofore mentioned, who did not observe the accident, but was subsequently called to the scene, estimated appellant's speed at 80 mph. This estimate was based, as he stated, "on the distance that the car was out of control and the severity of the impact." (The Majority is holding this testimony inadmissible, with which holding, I thoroughly agree.)

(3) Miss Overturf never did estimate the speed, only saying the car was going very fast.

(4) Henshaw testified that he was not driving in excess of 55 mph.

This was all the testimony relative to speed.

I do not think that the aforementioned evidence establishes intoxication, and the strongest competent evidence of the speed was 65 miles per hour. Of course, in

---

[1] The officer explained that from his experience in arresting people who were intoxicated, he had learned there was a difference in the smell of the breath when a fresh drink had been taken, and when the drinks had been taken over a period of time. He stated a fresh drink smelled as though fresh out of the container, while in the latter instance, the breath becomes soured.

numerous cases, we have said that in order to sustain a recovery under the Guest Statute, the negligence must be of even greater degree than gross negligence; it must be willful or wanton. *Edwards* v. *Jffers*, 204 Ark. 401, 162 S. W. 2d 472. In that case, an award of damages to a guest was reversed by this Court, and the cause of action dismissed. Mrs. Jeffers, a passenger in the Edwards car, was injured when the car traveled too rapidly around a curve and overturned. There was evidence that the automobile was traveling at a speed of 70 to 80 miles per hour. There was even evidence that Mrs. Jeffers protested two or three times to Mrs. Edwards about the rate of speed at which the car was being driven. This Court said that no willful and wanton negligence was established. This case involved purely a matter of speed. In *Lewis* v. *Chitwood Motor Co.*, 196 Ark. 86, 115 S. W. 2d 1072, this Court said that if a driver is under the influence of liquor to such an extent as to make him an incompetent driver, and such intoxicated condition contributes to the injuries complained of by the guest, still, there can be no recovery if the passenger knew, or by the exercise of ordinary care should have known, that the driver was under the influence of liquor, but not withstanding such knowledge, rode with him. In one of our more recent cases, *Poole* v. *James*, 231 Ark. 810, 332 S. W. 2d 833, a guest in a car operated by James instituted suit for damages, and following a directed verdict for the defendant in the trial court, appealed. This Court, quoting from Blashfield's Cyclopedia of Automobile Law and Practice, said:

"Where the road becomes dangerous, or the speed of the machine in which a passenger or guest is riding becomes excessive or unlawful, or the driver is otherwise careless or reckless in his conduct, and this is or ought to be known to the passenger, he is under the duty, in the exercise of ordinary care, to protect himself from injury, to caution the driver of the danger, remonstrate against it, and, unless the dangerous character of the surrounding conditions or the dangerous manner of operation is altered in such a way as to lessen the grave potentiality

of harm, to quit the car if that may be safely done, or to request the driver to stop the vehicle, and, when it has stopped, to get out of the car.''

Of course, the facts in these cases are not identical with the facts in the instant case, but the principle of law, just enunciated, is exactly the same. Let us review the evidence in the case before us to determine whether the guests in Henshaw's car remonstrated with him about his speed, or had the opportunity to quit the car. In the first place, if Henshaw was intoxicated when he went to the Overturf apartment, the girls could (and should) have refused to go with him. Miss Overturf testified that she smelled alcohol, and he ''kinda stumbled once'' (though she did not say this was because of intoxication, and people have been known to stumble when completely sober). In fact, she testified that she saw Henshaw walking, and talked with him in the apartment, and she was not afraid to go with him. She did go with him, and Miss Henderson insisted upon going also. Also, Miss Overturf testified she had been around Henshaw once since the accident, and had heard him talk, and she observed no difference in his speech on the latter occasion and that of the night of the accident. She testified that Henshaw started out in Hot Springs driving fast, and had to ''squeal his brakes'' to keep from hitting a car in front of them at a red light; thereafter, she closed her eyes because she was scared, until they reached Truman's Tavern, where Henshaw got out and went in and purchased the can of beer heretofore mentioned. The car was parked there for several minutes, and both girls had a clear opportunity to quit the car; instead, they remained, and drove to the tourist court where they were to meet a married couple. Again, Miss Overturf testified that she closed her eyes until they reached their destination. Here, also, the car was stopped for several minutes, and both girls had a second opportunity to quit the car. Instead of leaving it, they requested Henshaw to drive to Malvern to pick up Miss Henderson's boy friend, and this was the purpose of driving toward Malvern, where the accident occurred. During all of this time, from the

period of leaving the apartment until the accident occurred, *no one made a single protest to Henshaw* about his speed, or the can of beer that he had purchased; nor did either of the girls request to go home. Likewise, Miss Overturf testified there was no difference in his driving from the last stop made (the tourist court), to the scene of the accident, and his previous driving. "It was about the same." She testified that the only time anything was said about his driving was between Truman's Tavern and the tourist court, when she told him her scarf was blowing off (they were riding in a convertible), and he slowed down for her to put it back on. She stated that he did nothing to indicate he would not have slowed down had he been requested to do so. Under the principles of law heretofore set out, I am convinced that this judgment should be reversed, and the cause dismissed.

I therefore respectfully dissent.

GEORGE ROSE SMITH and ROBINSON, JJ., join in this dissent.