## WATERS v. COLEMAN.

5-2770

361 S. W. 2d 268

Opinion delivered October 15, 1962.

[Rehearing denied November 19, 1962.]

M. V. Moody, for appellant.

Wright, Lindsey, Jennings, Lester & Shults, for appellee.

JIM JOHNSON, Associate Justice. This case arises out of an automobile collision. Appellant, Mathew Waters, sued appellee, George Coleman, for personal injuries and damages to his automobile sustained by appellant when appellee's car hit the rear of appellant's car

on Highway 67, south of Jacksonville, October 19, 1960. Appellant was turning or about to turn left; appellee overtook him and tried to pass on the left, when the collision occurred. Appellant and his witnesses testified that appellee was traveling at a high rate of speed, which was contradicted by testimony of appellee and his witnesses, including an Arkansas State Police officer introduced as an expert on accident investigations. This officer was allowed to testify, *inter alia,* as to his opinion of appellee's speed and point of impact. Appellant objected to all of this witness' testimony and also objected to certain of appellee's instructions to the jury. The jury returned a verdict for appellee, and from the judgment comes this appeal.

The jury instructions give us a great deal of concern. To say the least, they could have been better worded, and appellant's position improved by more specific objections. However, since it is not necessary for a determination of this case, we do not pass on the instructions in this opinion.

For reversal appellant specifically urged that the trial court erred in permitting a state police officer to testify as an expert witness over appellant's general and specific objections, because there were four eye-witnesses in close proximity to the collision who testified seeing the collision and the impact, and that this evidence invades the province of the jury.

The officer's testimony abstracted from the record is as follows:

"I have been with the Arkansas State Police fifteen years. I am a graduate of the FBI Training School, Arkansas State Training School and Northwestern Traffic Institute. I have been an instructor in accident investigation in the Arkansas State Police since 1951. For the last ten years my job has been the investigation and analysis of all accidents investigated by our office.

"I am qualified by experience and training to examine points of impact or physical evidence at the scene of an accident and express an opinion of the speed and location of the vehicles. In determining the speed of a ve-

hicle there are a number of factors that are involved. The three major factors are the surface over which the car has traveled, the initial speed the car was traveling and whether the surface was upgrade or downgrade, and of course, wet or dry, in which the type of surface is taken into consideration. In a minimum speed estimate, I do not take into consideration the vehicle. In a probable speed estimate, in order to determine as near as possible the exact speed, that is taken into consideration.

"I went to the scene of the accident. I looked at the automobile driven by Mathew Waters.

"Of the Waters vehicle, I think the testimony I have heard in court here this morning is pretty well established his vehicle was traveling not more than 15 miles per hour and certainly that is a high speed to make a turn such as he was making. His speed would be estimated at a maximum of 10 miles per hour and the Coleman vehicle, of course, is a different matter. The surface over which he was sliding out there was dry, level asphalt and a test skid from that surface shows that it had a drag factor of holding factor of .75, which makes it three-fourths perfect over which to drive an automobile. In the formula we use, if you have two facts, then you can find the third factor. After the test skid was made we had the drag factor and 105 feet of skid marks involved in the initial accident and using the formula we do use, his speed would be 47.7 miles per hour when he applied his brakes. In other words, he would have to be traveling at that speed in order to slide his car to a stop in 105 feet without striking anything.

"The damage, of course, done to both vehicles, gives a pretty good estimate of the speed of the cars.

"As has been testified to, the speed of the Waters vehicle has been pretty well established, and the very small amount of damage done to both vehicles on impact between the cars leads to the opinion that the Coleman car was virtually stopped at the point of impact. The fact that the Coleman car traveled behind the Waters car after the impact and brought to a stop under control and driven off the highway indicates that Coleman's car

was under control at all times and traveling at a very low rate of speed at the point of impact. There has been testimony that the Waters car was knocked into the cafe. But it must be remembered that the Waters car was in motion and had been turned toward the cafe before point of impact. Had Coleman's car been traveling at 89 or 90 miles per hour—.

"The point of impact on these two vehicles, it had been testified on the Waters car was the left rear and on the Coleman car the testimony shows it was the right front. Now if the Coleman car had been traveling at a relatively high rate of speed then the Waters car would never have continued in that direction. Let me put it this way. It would be more understandable probably in the place of two automobiles we take two cue balls, we all know what cue balls are and in this case the Waters automobile had traveled at the specified speed of 10 miles per hour. It has been testified here by several witnesses that the Coleman car was traveling from 80 to 90 miles per hour. If the Coleman vehicle had struck the Waters vehicle, neither of them would have been in this court-room.

"The course of the two vehicles as shown on the diagram of the police report, had the Coleman vehicle struck the Waters vehicle at the point of impact as shown, the Waters vehicle would have been shoved straight south down the highway and they both would have been completely demolished."

On cross-examination, the witness testified that he did not see the accident, and that at the time of the accident he was probably at State Police Headquarters about twenty miles from the scene of the accident.

Appellee argues in effect that the officer's testimony simply explained to the jury the foundation upon which he reached his conclusions as to the single issue of the speed of the vehicles. *Ergo,* the evidence was admissible under the rule laid down in *St. Louis & S. F. R.* v. *Fithian,* 106 Ark. 491, 155 S. W. 88.

In our view, the witness' testimony went much further than contended by appellee. In fact it was tantamount to a reconstruction of the collision and a comment on the weight of the evidence. In this case there were five eye-witnesses who testified on behalf of appellant (including appellant) and two who testified on behalf of appellee (including appellee) in addition to the expert. While the testimony was in such hopeless conflict as to amount to a swearing match, the facts to be determined were not complicated. This was a relatively simple collision. Certainly there was no evidence to indicate that it was beyond the jury's ability to understand the facts and draw its own conclusions. The state of the record being thus, we find that the trial court erred in allowing appellee to resort to expert opinion. *Mo. Pac. R. Co.* v. *Barry,* 172 Ark. 729, 290 S. W. 942, *Henshaw* v. *Henderson,* 235 Ark. 130, 359 S. W. 2d 436.

Reversed.