J. Paul Smith Co. *v.* Tipton.

5-3148                                          374 S. W. 2d 176

Opinion delivered January 13, 1964.

*Shaw, Jones & Shaw,* for appellant.

*Sexton & Morgan, J. Marvin Holman,* for appellee.

PAUL WARD, Associate Justice. This litigation grows out of a collision between a 1954 Ford passenger car and a large trailer truck. Of the five people in the car, two were killed and the other three were injured. Of the three injured, one seeks no damages and is not a party herein. The basic facts are not complicated but the pleadings are somewhat involved and will be fully set out to clarify the several issues.

*Facts.* The accident occurred at about 3:30 a.m. on May 12, 1962 on U. S. Highway No. 64, a few miles west of Clarksville—near a motel called the "64 Hub". The car was owned and driven by Billy Joe Woolsey, aged 35. In the car were: Ronnie Tipton, aged 15, who was killed; Johnnie Lee Roughley, aged 18, who was killed; James C. Campbell, aged 18, and Tommy Crowder, aged 16, who is not a party litigant. The trailer truck which was hit from the rear was owned by appellant, J. Paul Smith Company [hereafter called Company], and it was

being driven by appellant, Pete George. For brevity, we may hereafter refer to the occupants of the car as the driver and the boys.

The driver and the boys got together about 9 or 10 p.m. the day before preparatory to going on a frog hunt that night. After the hunt was over and as they were returning home at about 3:15 a.m., traveling east, the car hit the rear end of the trailer truck as it was entering upon or was already on the highway. The truck had been parked at the motel on the previous afternoon on the south side of the highway—headed north. It was dark, and when the truck was pulling out onto the highway (according to appellees) or after it had proceeded some 100 to 200 feet east along the highway (according to appellants) the collision occurred. Whether another car (traveling west) contributed to the cause of the collision is a disputed question. Appellants, however, do not challenge the sufficiency of the evidence to support a finding of negligence on their part.

*Pleadings.* The parents of Tipton and Roughley, and the mother of Campbell sued the Company and Pete George (hereafter referred to as appellants) for negligently driving the truck upon the highway. They also sued Woolsey, charging him with wanton and wilful negligence in driving the car. Woolsey entered a general denial and also cross complained against appellants. Appellants denied all allegations of negligence in the complaint and the cross complaint, and, in addition, pleaded (a) that the boys were on a joint venture with Woolsey and consequently his negligence was imputed to them; and, (b) that the boys were guilty of contributory negligence. Appellees denied the allegations in appellants' cross complaint. Woolsey, who was an original defendant, received no award from the jury, and he has not appealed.

*Trial.* At the close of all the testimony interrogatories were submitted to the jury with the results indicated:

No. 1. Appellant, Pete George, was guilty of negligence as charged which was the proximate cause of the injuries—his negligence was 80%.

No. 2. Woolsey was negligent in operating his car which was the proximate cause of the injuries—negligence was 20%.

No. 4. The boys were not on a joint enterprise with Woolsey.

Nos. 6, 7, and 8. Campbell, Tipton, and Roughley assumed the risk of riding with Woolsey.

No. 9. Judgments:

| | |
|---|---:|
| Campbell | $20,000 |
| Tipton | 12,500 |
| Roughley | 12,500 |

No. 10. No judgment for Woolsey.

For a reversal, appellants ably and earnestly rely on the eight separate points hereafter discussed.

*One.* Appellants here make the novel and interesting contention that the boys should not be allowed to recover because they "assumed the risk of the harm that might come to them through the negligent acts of Billy Joe Woolsey in the operation of the vehicle in which they were riding". This contention is based partly on the fact (as found by the jury) that Woolsey was 20% negligent and that his negligence was a proximate cause of the injuries. It is also contended that under the well established "assumption of the risk" rule they could recover nothing, and that this rule was not affected in any way by our comparative negligence statute—Ark. Stat. Ann. § 27-1730.1 (Repl. 1962). This argument, appellants say, is supported by the case of *Bugh* v. *Webb*, 231 Ark. 27, 328 S. W. 2d 379. We are not convinced by appellants' argument. We think the *Webb* case relied on by appellants is not in point for the reasons hereafter pointed out. In that case [at page 34 of the Arkansas Reports] we said:

"The rule which we think is most applicable in the case under consideration is set forth in 15 A.L.R., Second,

Page 1180, Section 9, under the heading 'Assumption of Risk'. It is there stated that the necessary elements of assumption of risk by guests are clearly defined as follows: 'First, there must be a hazard or danger inconsistent with the safety of the guest; second, the guest must have knowledge and appreciation of the hazards; and third, there must be acquiescence or willingness on the part of the guest to proceed in the face of danger.' "

We then pointed out (1) that drag racing was hazardous; (2) that Webb was aware of the hazard; and, (3) that he had an opportunity to protest but failed to do so. The above mentioned set of facts is just the opposite of the facts in the case under consideration—(1) driving on the highway is not drag racing; (2) the boys did not know the truck would be negligently driven onto the highway; and, (3) they had no reasonable opportunity (14 seconds) to protest. In the *Webb* case the Court made it plain, we think, that the result would have been different if any of the enumerated facts had been lacking.

To adopt the rule which appellants appear to espouse would lead to an illogical and unjust result. It would allow Woolsey (the negligent driver) to recover, but it would deny recovery to the boys who had no control over the car.

We are unable to understand how our comparative negligence statute in any way operates to modify or repeal the doctrine of assumption of the risk as it applies to the case under consideration and as it has been uniformly construed by the courts in this and other jurisdictions—that is, a person does not assume the risk of the negligence of a third party and does not assume a risk of which he is not aware. The rule, as applied to cases of this nature is very well stated in 61 C.J.S. *Motor Vehicles* § 486, where appears this statement:

"A guest's assumption of risk, in case of a motor vehicle collision, applies only as between the guest and his host, and does not bar recovery from a third person for injuries to which the third person's negligence prox-

imately contributed, unless the acts of the host, in which the guest acquiesces, operate as the cause of the collision."

There are many authorities and decisions in substantial agreement with the above statement. See: 4 Blashfield, *Cyclopedia of Automobile Law and Practice,* § 2511; *Keowen* v. *Amite Sand & Gravel Co.,* (La. 1941 4 So. 2d 79; and *Guile* v. *Greenberg,* 192 Minn. 548, 257 N. W. 649.

*Two.* On August 29, 1962, the complaint herein to recover for the death of Ronnie Tipton and Johnnie Lee Roughley was filed by Ronnie's parents (as next of kin) and by Johnnie's mother (as next of kin). The trial began on Feb. 14, 1963, and later that same day it was learned that Harlan Tipton had just been appointed *administrator* of the estate of his son (Ronnie) and that the mother of Johnnie had been appointed *administratrix* of his estate. When the above information was revealed to appellants they promptly moved the court to dismiss the complaint insofar as it applied to the deceased boys. The motion was founded on Ark. Stat. Ann. § 27-907 (Repl. 1962), enacted in 1957. It suffices here to point out that it requires these two mentioned actions to be "brought by and in the name of the personal representatives" of the deceased boys. We think the trial court was correct in refusing appellants' motion to dismiss. As soon as the erroneous procedure was called to appellees' attention they, with permission of the court, amended the complaint by proper interlineations.

We are unable to see how appellants were in any way prejudiced, and they did not ask for a continuance on that ground. Under the liberal method of procedure provided for in Ark. Stat. Ann. § 27-1160 (Repl. 1962) we think the trial court not only had the power to permit the amendment but that he would have been derelict in his duty had he not done so. This section, among other things, provides:

"The court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleadings or proceedings by adding or striking out the

name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case; or when the amendment does not *change substantially* the claim or defense, by conforming the pleading or proceeding to the facts proved." (Emphasis added.)

It cannot be contended here that the substitution of parties plaintiff changed "substantially the claim or defense" of either party. This Court apparently has recognized a difference between *bringing* an action and *maintaining* an action in court. In *St. Louis M. & S. E. Rd. Co.* v. *Garner,* 76 Ark. 555, 89 S. W. 550, it was said: "The plaintiff (appellee) had no right to *bring* or *maintain* this action, there being a personal representative of the deceased". (Emphasis added.) In the case before us the next of kin did not try to *maintain* the action after the appointment of the personal represenatives was called to the attention of the court.

*Three.* We find no reversible error in the court's instruction telling the jury it had the right to "take into consideration . . . any loss of earnings sustained or which may be sustained in the future as a result of said injury". This particular instruction was given with reference to appellee James C. Campbell, who was 18 years old at the time of the collision. Appellants also objected to similar instructions, though worded differently, with reference to the two deceased boys. There, the court told the jury they could take into consideration the value of the services the boys would have rendered their parents until they should reach the age of majority, and the amounts they would have contributed after reaching the age of majority. Appellants cite *Missouri and Arkansas Railway Co.,* v. *Treece,* 210 Ark. 63, 194 S. W. 2d 203, as holding that, in this situation, the verdict of the jury must be based upon *reasonable inferences from established facts* and not on conjecture or speculation. Just how much the jury allowed in each case cannot be known because of the form of the verdicts, which was not objected to by appellants. It has been held that a person can recover for impairment of earning capacity even though he was not employed at the time. See: *Germ*

v. *City and County of San Francisco,* 222 P. 2d 122 (Cal. 1950). It has been held that a housewife who stays at home can recover. See: *LeMay* v. *Minn. St. Ry. Co.,* 71 N. W. 2d 826 (Minn. 1955), and to the same effect is the case of *Fort Smith Gas Co.* v. *Lewis,* 202 Ark. 427, 150 S. W. 2d 622. Examination of many of our own cases reveals that we have been liberal as to the amounts of evidence required to justify an instruction for loss of earnings. See: *Wis. & Ark. Lbr. Co.* v. *Standridge,* 132 Ark. 535, 201 S. W. 295.

In the case of Campbell, 18 years old when injured, it was shown he had been attending a school for mechanics to prepare for work in the future and it also appears that he was going to "work in peaches" during the season. In his case there can be no doubt his earning capacity has been diminished as a result of his extensive injuries. As to the deceased boys: The record shows that Ronnie, aged 15, did work around the house, waxed floors, mowed the lawn, and helped with flowers. The record shows that Johnnie, aged 18, was a good boy, worked around the house, ran errands and helped to look after the younger child. From these facts we think the jury could very *reasonably infer* that to supply all of these services would have cost money. Just how much value should have been placed on these services, or was placed on them by the jury, is of course speculation. For that reason alone, no reversible error has been shown.

*Four.* After careful study of the record we find no substantial evidence to justify submitting to the jury the question of contributory negligence on the part of any one of the boys. There was testimony that each boy drank a can of beer sometime during the trip, and there was also testimony they didn't drink any beer. At any rate there is no evidence as to when beer was drunk or that it contributed to the accident. Also, Crowder said he heard *one* of the boys tell Woolsey to "step on it" —"or something like that", but there is no evidence to show which boy made that statement. Moreover, if the identity of the boy were known, his negligence (if any) could not be imputed to the other boys since (as found

by the jury) they were not on a joint enterprise and therefore no boy had any control over any other boy. It might be urged, however, that each boy was negligent in not protesting Woolsey's accelerated speed when he was told to "step on it". The answer is that (according to Crowley's testimony) *one* boy did promptly tell Woolsey to "watch out". But again, that *one* boy is not identified. From all this we are led to conclude that any finding of negligence on the part of any one of the boys would have to be based entirely on speculation.

*Five.* Over appellants' objections the court gave the following instructions:

"You are instructed that vehicles being operated on a through highway have the right of way over other vehicles attempting to enter or cross such through highway. You are further instructed that such right of way extends to the entire passage across the through highway, and that the driver of a vehicle attempting to enter or cross such through highway does not discharge his duty by merely stopping before entering the through highway."

"You are instructed that the driver of a vehicle upon a through highway has the right of way and is not required to slow down at a private driveway or bring his vehicle under such control as to be able to stop, but is entitled to assume that other drivers attempting to enter or cross such through highway will obey the law and yield the right of way to him."

Appellants apparently admit these instructions accurately state the law as set out in our statutes, but object that the instructions do not impose on both drivers (the driver of the truck and the driver of the car) the same duty to exercise due care. We find no merit in this objection for the reason that other instructions (not challenged here) cover the matter of due care. The purpose of the instructions was to aid the jury in determining which of the two drivers was at fault, or most at fault, for the collision.

*Six.* The trial court refused to give appellants' instruction No. 60 which reads:

"You are instructed that if you find from a preponderance of the evidence in this case that the plaintiff's decedents and plaintiff, James C. Campbell, had been drinking intoxicants, or were drinking intoxicants with the driver of the vehicle in which they were riding, then you are instructed that the plaintiff's decedents and the plaintiff, James Campbell, *were on a joint venture with the driver of the vehicle* in which they were riding and the negligence, if any, on the part of the driver of the vehicle in which they were riding is imputed to them." (Emphasis supplied.)

Appellants, recalling the testimony relative to the five cans of beer previously referred to, rely on our opinions in *Mo. Pac. Tpn. Co.* v. *Howard,* 201 Ark. 6, 143 S. W. 2d 538, and *Wilson* v. *Holloway,* 212 Ark. 878, 208 S. W. 2d 178, to justify the instruction. We cannot agree with appellants that the above decisions justify giving the instruction under the facts in this case. In the *Howard* case there was testimony that the people in the car were "driving around on pleasure bent"; that they had been drinking both beer and whiskey; and that the owner of the car and another member of the party attempted to dance, "but were too inebriated to do so". In the *Wilson* case the issue of whether the parties were on a joint enterprise was left to the jury. The vice in the proffered instruction is that it binds the jury to reach a definite result regardless of when, where, or how much intoxicants were drunk. In those respects, nothing was left to the discretion of the jurors.

*Seven.* Trooper Bob Pritchard, Arkansas State Police, was placed on the stand by appellees to testify relative to the location of the debris (resulting from the collision) and relative to how long it would take to drive a car between two points at a specified rate of speed. Appellants say the court erred in allowing the witness to virtually "reconstruct" the collision which we said in two recent decisions constituted reversible error. The decisions referred to are *Henshaw* v. *Henderson, Special*

*Adm'r,* 235 Ark. 130, 359 S. W. 2d 436, and *Waters* v. *Coleman,* 235 Ark. 559, 361 S. W. 2d 268. We are unable to agree with appellants that Pritchard's testimony in this case amounted to or even approached recreating the collision. The testimony objected to is set out hereafter.

"Q. At my request, did you run a test of a vehicle driving sixty miles an hour, the time it took a vehicle at sixty miles an hour to come from that point to the place on the highway where you found the debris and where the skid marks terminated?

"A. Yes sir.

"Q. Now, from the sign midway up the hill west of Little Spadra Creek to the place on Highway 64 at the Hub where you located the debris and where the skid marks terminated, driving at sixty miles an hour, what was the elapsed time it takes a vehicle to travel from that sign to that place?

"A. Sixteen seconds.

"Q. Sixteen seconds?"

From the above it is obvious that the witness was not called on to reconstruct anything, to express any mysterious conclusions, to comment on the evidence, nor did the accuracy of his answers depend on the weather, the make or condition of the car, or the condition of the road—some of the controlling factors in the cases cited above.

*Eight.* Finally it is argued that the verdicts are excessive. At first it was thought by appellants that one verdict exceeded the amount sued for, but this is satisfactorily explained as a typographical error. We find nothing in the record that indicates any of the verdicts is excessive, considering all the elements the jury had a right to consider. As to *Campbell:* He sued for $47,930.10 and recovered $20,000. He received serious and permanent injuries; suffered great pain and will continue to do so; he incurred hospital bills of more than $1,200; his leg will be permanently disabled to some

extent, and his earning capacity has been and likely hereafter will be impaired. All this, we think, justified the jury in returning a verdict of $20,000. As to the *deceased boys,* there has not been and never will be devised a definite and satisfactory rule by which to determine the amount of money required to compensate parents for mental anguish. Ronnie Tipton and Johnnie Lee Roughley were normal boys with normal parent-child relationships. There can be no doubt from the testimony that their parents' grief was deep and genuine. The depth of grief of the mother of Johnnie was so great that she was unable to sleep at night and she often arose from the bed and walked some four miles to the cemetery where he was buried. Ronnie Tipton was an only child. We are unwilling to say the judgment of $12,500 in each case was excessive.

Finding no error we hereby affirm on direct appeal the judgment of the trial court.

*Cross Appeal.* As previously set out the jury returned a verdict in favor of Campbell in the amount of $20,000, and verdicts in the amount of $12,500 in each of the other cases involving the two deceased boys. Thereupon the trial court reduced the amount of each verdict by 20% and entered judgment accordingly. Undoubtedly the trial court was guided by the fact that the jury found (as previously set out) that Woolsey was 20% negligent (in causing the accident) and by the fact that the boys assumed the risk of riding with Woolsey (as found by the jury).

Appellees acknowledge that this Court has never before considered the exact point here raised, but they contend that the principles we announced in the case of *Lockhart* v. *Ross,* 191 Ark. 743, 87 S. W. 2d 73, logically lead to a reversal of the court's action in reducing the judgments. *The Lockhart* decision does to some extent confirm appellees' contention herein. It is a definite announcement, under the facts of that case, that a passenger in a car (as Campbell) is not liable in damages to third parties (as appellants) because of the negligence of the driver of the car (as Woolsey) where the passen-

ger was not on a joint enterprise with the driver (as was the relationship in this case). It would seem to follow from the above, therefore, that the boys in this case should not be penalized (by a reduction of the judgments against appellants) because of the negligence of Woolsey.

However, since we are not bound by any decision under the facts of this case, we feel at liberty to consider certain other features which lead us to a different conclusion than that urged by appellees. In the first place, in the *Lockhart* case, the question of assumption of the risk was not involved. If it had been, we can not be sure what effect it would have had on the court's decision. From the standpoint of logic and justice much can be said to sustain the action of the trial court in reducing the judgments here involved. To simplify the point at issue we will consider only the case of Campbell. The verdict of the jury has established the fact that appellants' negligence was only 80% the cause of his injuries and that Woolsey's negligence was 20% the cause. It is further established by the jury that Woolsey's negligence was assumed by Campbell. Under these established facts we cannot escape the conclusion that the more logical and equitable rule calls for each party to be responsible in proportion to his own degree of negligence. Under the court's holding appellants will pay their proportional part, while the part for which Woolsey was responsible was voluntarily waived by Campbell. So, as between Campbell and appellants, it seems more reasonable that he should bear the loss of 20% of the judgment. What we have said relative to Campbell is applicable, of course, to the other occupants of the car.

It is therefore our conclusion that the judgment of the trial court on cross appeal should be, and it is hereby, affirmed.

Affirmed.

McFADDIN, J., concurs.

ED. F. McFADDIN Associate Justice (concurring). I concur in the final result reached by the Majority in this case, but I have pursued a slightly different method of reasoning to arrive at such conclusion; and, for whatever benefit it may be to the litigants and the Bar generally, I now state my method of reasoning.

In Point Four the Majority Opinion says: "After careful study of the record we find no substantial evidence to justify submitting to the jury the question of contributory negligence on the part of any one of the boys." I think that this issue of the contributory negligence of the boys should have been submitted to the jury in the interrogatories requested by the appellants. The appellants pleaded the defense of contributory negligence on the part of the boys; there was evidence that the boys and the driver of the car (Woolsey) had been drinking together; there was evidence that one of the boys urged Woolsey to see how fast the car would go; there was evidence that Woolsey then began driving the car 85 miles per hour; there was no evidence that any of the boys ever protested such speed; and there was evidence that the car was going at a very rapid rate of speed at the time it hit the trailer. These items of evidence, I think, were sufficient to require the Court to submit to the jury the question of whether the boys were guilty of contributory negligence; so I differ with the reasoning of the Majority on this point.

However, I arrive at the same conclusion that the Majority has reached, because I think that any error in failing to submit to the jury the issue of the contributory negligence of the boys was cured when the Trial Court reduced the verdicts by 20%, which was the amount of the contributory negligence of Woolsey. Certainly the occupants of the car could not have been guilty of a greater degree of contributory negligence than was the driver; so in reducing the verdicts the Trial Court cured the error in failing to submit to the jury the issue of the contributory negligence of the boys.

500

The jury verdict for Campbell was $20,000.00; the Trial Court reduced this 20% and rendered judgment for Campbell for $16,000.00. The jury verdict for the Tiptons was $12,500.00; the Trial Court reduced this 20% and the judgment was for $10,000.00. The jury verdict for Mrs. Roughley was $12,500.00; the Trial Court reduced this 20% and the judgment was for $10,000.00. Thus the Trial Court reduced the verdicts by 20% which was the percentage of contributory negligence the jury found to be attributed to Woolsey, the driver of the car. The appellees are in no good position to claim that this reduction of 20% was excessive, since it was at their insistence that the issue of contributory negligence of the occupants of the car was not submitted to the jury. Therefore, my conclusion is that there should be affirmance of the case on direct appeal and cross appeal.