Joseph HELTON et al *v.*
MISSOURI PACIFIC RAILROAD COMPANY et al

75-34 · 538 S.W. 2d 569

Opinion delivered July 19, 1976

*Holloway & Haddock,* by: *Bill R. Holloway,* for appellants.

*Herschel H. Friday, Robert V. Light,* and *Williamson, Ball & Bird,* by: *Samuel N. Bird,* for appellees.

J. FRED JONES, Justice. This is an appeal by Joseph Helton and Elgin Bush, individually, and as next friends of their minor sons Danny Helton and Donald Bush, hereafter referred to as "Helton" and "Bush," in a suit they filed against the appellees Missouri Pacific Railroad and Robert D. Selby.

The facts appear as follows: Helton was 16 years of age and owned a Honda motorcycle. Bush was 14 years of age. The two boys were close personal friends and Bush was in the habit of riding around with Helton on Helton's motorcycle. On November 19, 1974, Bush was riding behind Helton on the motorcycle with Helton driving as they crossed the Missouri Pacific Railroad tracks at an elevated street crossing inside the city limits of Lake Village. As the boys approached the railroad crossing, they were unable to see what was

beyond the crossing and at that point they observed a pickup truck belonging to, and being driven by, the appellee Selby backing into the street approximately 92 feet ahead of the motorcycle and in the same lane of traffic. Another automobile was approaching from the opposite direction the motorcycle was traveling and the motorcycle collided with the back portion of the pickup truck. The motorcycle was damaged and both boys were injured.

Two separate suits were filed by Bush and Helton and they were consolidated for trial. The complaints alleged that the collision was the result of the negligent acts of Missouri Pacific Railroad in constructing and maintaining an unsafe street crossing on an elevated dump or roadbed in such manner that the vision was obstructed from one side of the crossing to the other; that Selby was negligent in his failure to yield the right-of-way; failure to keep a proper lookout for oncoming traffic and in driving his vehicle from a private driveway into the plaintiffs' traffic lane in violation of statute. A jury trial resulted in verdicts for the defendant-appellees Missouri Pacific and Robert D. Selby in both cases.

On appeal to this court the appellants have designated the points on which they rely for reversal as follows:

A. Appellant Bush—

## I

The trial court erred by instructing the jury that passenger assumed the risk of his injuries when the uncontradicted facts show that the passenger could not have known or anticipated the risk that appellee would illegally back his vehicle into the motorcycle's lane of traffic from a private driveway when under the law there is no duty to assume that another person will violate the law.

## II

The trial court committed reversible error in instructing the jury on joint enterprise as between operator and passenger of a motorcycle when the ride was within the corporate limits of Lake Village and for no particular purpose except pleasure.

B. Appellant Helton—

I.

The trial court erred by submitting an instruction to the effect that the mere happening of an accident is not of itself, evidence of neligence when there was uncontradicted proof in the record that appellee had been negligent by violating Ark. Stat. Ann. 75-624 by failing to yield the right-of-way by pulling his vehicle from a private driveway into a public street.

Appellant Bush, the passenger on the motorcycle, contends the trial court erred in giving AMI Instruction 612 as the court's instruction 17. This instruction permitted the jury to render a verdict in favor of Selby if the jury determined that Bush had "assumed the risk" for his injuries. Bush argues that the evidence failed to show that Bush assumed the risk for Selby's actions. Appellee Selby argues that the risk Bush assumed was not the risk of negligent acts on the part of Selby, but the risk of appellant Helton's negligent acts in the operation of the motorcycle and, therefore, Selby contends instruction 17 was proper.

In Prosser, Torts § 68 (4th ed. 1971), appears the following:

It is here that is the greatest misapprehension and confusion as to assumption of risk, and its most frequent misapplication. It is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to negligence of the defendant which creates it. A pedestrian who walks across the street in the middle of a block, through a stream of traffic traveling at high speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to avoid running him down. On the contrary, he is insisting that they shall. This is contributory negligence pure and simple; it is not assumption of risk. And if A leaves an automobile stopped at night on the traveled portion of the highway, and his passenger remains sitting in it, it can readily be found that there is consent to the negligence of A, but not to that of B, who runs into the car from the rear. This is a distinction

which has baffled a great many law students, some judges, and unhappily a few very learned legal writers.

Thus, if Bush did assume the risk of Helton's negligent driving, the proper instruction should have been one concerning Bush's comparative neligence, that is, Bush was negligent in riding with Helton. The jury should have been instructed to compare the negligence of Bush and Selby instead of ruling in favor of Selby because Bush assumed the risk. See AMI 2102.

Appellee Selby cites a portion of 61 C.J.S. Motor Vehicles, § 486 (7), quoted by this Court in *J. Paul Smith Co.* v. *Tipton*, 237 Ark. 486, 374 S.W. 2d 176 (1964), and in *Hass* v. *Kessell*, 245 Ark. 361, 432 S.W. 2d 842 (1968), as authority for the questioned instruction.

A guest's assumption of risk, in case of a motor vehicle collision, applies only as between the guest and his host, and does not bar recovery from a third person for injuries to which the third person's negligence proximately contributed, unless the acts of the host, in which the guest acquiesces, operate as the cause of the collision.

Neither this rule from C.J.S. nor the Arkansas cases where it was quoted call for the instruction 17. Bush was not suing the driver Helton for negligence; the C.J.S. rule limits the assumption of risk defense to the driver charged with negligence. Cases from other jurisdictions, *Calahan* v. *Wood*, 24 Utah 2d 8, 465 P. 2d 169 (1970); *Keowen* v. *Amite Sand & Gravel Co.*, 4 So. 2d 79 (La. App. 1941); *Guile* v. *Greenberg*, 192 Minn. 548, 257 N.W. 649 (1934), as well as the two Arkansas cases, *supra*, clarify the last clause of the C.J.S. ("unless the acts of the host, in which the guest acquiesces, operate at the cause of the collision.") Where the host causes the collision, the recovery of the guest is affected by the guest's comparative negligence in riding with the negligent host. However, the guest's recovery is not barred by assumption of risk. In *J. Paul Smith Co.* v. *Tipson, supra*, Tipton was a passenger in an automobile driven by Woolsey. Woolsey drove his automobile into the rear of a truck which negligently drove onto the highway. Tipton was killed in the collision and the Tiptons sued the truck company and driver *and also sued Woolsey*. The jury found that Woolsey contributed 20% of

the negligence and that the truck driver contributed 80% of the negligence which caused the death of young Tipton; and, that the negligence of Woolsey, as well as the negligence of the truck driver, was a proximate cause of the injuries and death. Contributory negligence did not go to the jury. The verdict for Tipton fixed the amount of damages and the trial court reduced the amount by 20% in the judgment against the truck company. It seems that the Tiptons waived their right to any judgment against Woolsey. On appeal the truck driver and truck company asserted assumption of the risk and contended:

> that the boys should not be allowed to recover because they "assumed the risk of the harm that might come to them through the negligent acts of Billy Joe Woolsey in the operation of the vehicle in which they were riding." This contention is based partly on the fact (as found by the jury) that Woolsey was 20% negligent and that his negligence was a proximate cause of the injuries. It is contended that under the well established "assumption of the risk" rule they could recover nothing, and that this rule was not affected in any way by our comparative negligence statute.

In affirming the judgment of the trial court this court said:

> To adopt the rule which appellants appear to espouse would lead to an illogical and unjust result. It would allow Woolsey (the negligent driver) to recover, but it would deny recovery to the boys who had no control over the car.

*Hass v. Kessel, supra,* was the consolidation of two lawsuits resulting from an automobile collision. The driver of car 1, Morris, sued the driver of car 2, Hodges, and the passenger of car 1, Kessell, sued the driver of car 2, Hodges. Hodges was killed in the accident and Hass, the appellant, was the administrator of the Hodges estate. The case was submitted to the jury on interrogatories and the jury found the following percentages of negligence:

| | |
|---|---|
| Hodges 44% | Hodges 75% |
| Morris 56% | Kessell 25% |

The trial court reduced the amount of Kessell's damages by 25% and entered judgment for Kessell against Hodges' estate. The appellant argued on appeal as follows:

> The Trial Judge erred in refusing to apply the jury's finding that appellee Louis Kessell assumed the risk of riding with his host whose negligence exceeded fifty per cent and further erred in refusing to dismiss appellee Kessell's complaint.

This court on appeal dismissed the appellant's argument saying:

> We are unable to see where assumption of risk as an element separate and apart from contributory negligence enters into the picture in this case at all. * * * Although Kessell assumed the risk of riding with Morris, and although he may have been negligent in doing so, he was not driving the Morris automobile, nor was he directing Morris in its operation at the time of the collision. Kessell did not sue Morris, but he did sue Hodges' estate for damages he sustained because of Hodges' negligence. The jury found that the combined negligence of Hodges and Kessell caused the damages sustained by Kessell and that Hodges contributed 75% and Kessell contributed 25% of this total negligence causing Kessell's injuries, and the court correctly found that as between Kessell and Hodges, Hodges was only liable for 75% of Kessell's damages.

Although a jury instruction was not in issue in *Hass* v. *Kessell, supra,* the majority opinion indicates there is no need for any assumption of the risk instruction where the plaintiff guest in a motor vehicle is not suing his host driver.

Under the rationale of the concurring opinion in *Hass, supra,* the negligence of Helton, which the jury found to be greater than the negligence of Selby, might have been imputable to Bush because Bush assumed the risk of riding with Helton; and, therefore, Bush's negligence was greater than Selby's. But the instruction 17 given in the case at bar did not require the jury to hold against Bush if it determined that Bush assumed the risk of riding with Helton, and if it deter-

mined that Helton was more negligent than Selby. Rather, instruction 17 is the classic assumption of the risk instruction to the effect that a plaintiff who assumes the risk is barred from receiving recovery from the defendant. See AMI 612.

We conclude that the trial court erred in giving instruction 17 on assumption of risk because assumption of the risk by appellant Bush for the negligent acts of appellee Selby was not involved.

Under his second point the appellant Bush contends that there was not sufficient evidence to justify the trial court in instructing the jury on joint enterprise, and the trial court erred in giving AMI 712 as the court's instruction No. 18. The appellant argues that there was no evidence showing the second element of joint enterprise under AMI 712: "An equal right to share in the control of the operation of the vehicle."

In *Wymer* v. *Dedman,* 233 Ark. 854, 350 S.W. 2d 169 (1961), this court quoted with approval from 4 Blashfield, Chapter 65, as follows:

> It is commonly a question of fact, for the jury to say, whether a joint enterprise existed between the driver and another occupant of an automobile, except where the evidence as to the existence of such a relation is insufficient to go to the jury.

> The doctrine of joint adventure, in connection with the operation of motor vehicles, should be restricted to those cases where the common right to control its operation and the correlative common responsibility for negligence in its operation either are clearly apparent from the agreement of the parties or result as a logical and necessary conclusion from the facts as found.

As already pointed out, the evidence in the case at bar shows that the appellants, two teenaged boys, were riding together on appellant Helton's motorcycle and that appellant Bush was the guest on the motorcycle. Helton testified that he and Bush often made such rides and that he would take Bush to destinations Bush suggested. Bush testified that Helton would take him to destinations in the community

which Bush wanted to visit. Bush also testified as to his role in controlling the speed of the motorcycle when he rode with Helton.

> Q. Let me ask you this, Donald. If you were ever going too fast, in your opinion, do you feel like you would have had the authority to tell him to stop, and let you off that thing?
>
> A. I would have, but I wouldn't know how, it is hard to judge how fast you are going on the back.
>
> Q. You just ride on the back, and the speed is up to him?
>
> A. Yes, sir.
>
> Q. If you ever had the sensation that this thing was just going too fast for you, would you have felt like you could say, "Stop and let me off?"
>
> A. Yes, sir.
>
> Q. You think you could have done that?
>
> A. Yes, sir.
>
> Q. If he had ever been driving the motorcycle in such a manner that you felt like he was reckless, would you have felt like you could have said, "Stop and let me off?"
>
> A. Yes, sir.
>
> Q. And would he have honored that request?
>
> A. Yes, sir.

We are of the opinion the evidence does not establish equal control of the motorcycle between the driver and his passenger. The answers of the appellants simply say that Helton, as a friend of Bush, would take Bush where Bush wanted to go. There is no testimony that Bush had the right to determine the destination of the pair over the objection of Helton. Bush's testimony as to his control of the speed of the motorcycle indicates that he left the speed up to Helton and that Bush had the right to have the vehicle stopped so he could get off.

In Restatement of Torts (2d), § 491 (1965), is found language as follows:

> [I]f there is no prearrangement for a substantial sharing of the expenses of the trip, . . . the trip is not a joint enterprise merely because it is made at the request of the

plaintiff, because he and his host have a common destination, because the destination or any change in it is to be determined by mutual agreement, because it is arranged that the guest is to drive alternatively with his host, or even because they are going to the common destination to accomplish a purpose in which they have a common but not a business interest. No one of these facts, nor indeed all of them together, is sufficient to justify a jury or other trier of fact in finding that the trip was a joint enterprise.

In *Woodard v. Holliday,* 235 Ark. 744, 361 S.W. 2d 744 (1962), the court found error in instructing the jury on joint enterprise because the testimony failed to show equality of control between the passenger and host of an automobile. The case involved two salesmen who traveled together; they took turns suggesting locations where they should go to call on customers. In that case this court said:

> Joint control and joint responsibility should go hand in hand; neither should exist without the other. If the passenger shares the responsibility for the physical control of the vehicle then it is proper for him to share the liability for the driver's negligence. But if the responsibility of control is not shared then the liability ought not to be shared. In the case at bar the trial court's error lies in permitting the jury to infer the existence of the second requirement from proof of the first, which in effect amounted to doing away with the second requirement altogether.

We conclude that the trial court erred in giving instruction 18 under the evidence in this case.

The appellant Helton contends that the trial court erred by submitting AMI instruction 603 as the court's instruction 16, to the effect that the mere happening of an accident is not of itself, evidence of negligence when there was uncontradicted proof in the record that appellee had been negligent by violating Ark. Stat. Ann. § 75-624 (Repl. 1975) by failing to yield the right-of-way by pulling his vehicle from a private driveway into a public street. We find no error in giving this instruction. The appellant could have requested the court to

give AMI 601 as follows:

> A violation of Ark. Stat. Ann. 75-624 although not necessarily negligence, is evidence of negligence to be considered by you along with all of the other facts and circumstances in the case.

The judgment as to Bush v. Selby is reversed and that cause remanded for a new trial. The judgment as to Bush v. Missouri Pacific and the judgment as to Helton v. Missouri Pacific and also v. Selby are affirmed.

Affirmed in part; reversed in part.