LEE *v.* CRITTENDEN COUNTY.

4-9054                                                      226 S. W. 2d 79

Opinion delivered January 23, 1950.

*Herman Spears*, for appellant.

*Hale & Fogleman*, for appellee.

HOLT, J.  Appellee, Crittenden County, sued appellant, Construction Company, to recover damages to its radio tower alleged to have been caused by the negligence of appellant in the construction and maintenance of its wooden elevator tower or shaft which it was alleged fell against appellee's radio tower during a windstorm.

Appellant answered with a general denial and further defended on the ground that any damages suffered by appellee were due solely to a severe windstorm, "that is to say an Act of God."

A jury trial resulted in a verdict for appellee in the amount of $1,353.16, and from the judgment is this appeal.

Appellant first questions the sufficiency of the evidence.

Appellant, under a contract to remodel the county jail, had erected a wooden elevator tower or shaft about 40 ft. in height, about 7 ft. square at the base, and slightly smaller at the top. The corner posts were 4 x 4's, resting on boards 2 x 12. The tower was braced by 2 x 6's and guyed by two ¾ in. sea grass ropes. "A. There were no stakes driven there" (at the base of the tower). It contained an elevator platform which rested near the second floor window of the jail at the time the tower fell.

The corner posts showed marks, or evidence, of having been struck by some object. There was also a board 2 x 6 around the bottom of the tower, which sat on the ground.

Witness, Cecil Goodwin, described the radio tower: "A. The radio is Motorola equipment and the tower is made out of angle iron in triangle form, three ways strapped together with strips of metal. It is 195 feet tall, it has five guy wires from each angle of the triangle form and those guy wires are anchored to a dead-man and each dead-man has about one-half a yard of concrete in the hole and the base of the tower is about seven feet deep filled with concrete; probably·one and a half to two yards of concrete in the base."

On the night of December 31, 1947, shortly following a severe "though not unprecedented" windstorm, it was discovered that the wooden elevator tower above had been blown over and had fallen across the guy wires attached to the radio tower, causing it to "buckle" and fall. With the exception of the three lower 20 ft. sections of the radio tower which were left standing, the tower had buckled and fallen. "The anchors were all intact, the ground was not even broken" at the base of the radio tower. There was evidence that this radio tower would withstand a wind velocity of 100 miles per hour and that the windstorm in question was not strong enough to have caused it to fall.

Also in evidence were certain photographs made on Sunday following the mishap on Wednesday night before, which fairly reflected the surroundings, the condition of the radio tower, its guy wires and the elevator shaft as they existed immediately after their fall.

We do not attempt to detail the evidence. It suffices to say that when we consider and weigh all the testimony, in the light most favorable to appellee, as we must do, we are unable to say that there was no substantial evidence from which the jury could have found, and must have found, that appellant was negligent in the construction, operation and maintenance of its wooden elevator shaft, as alleged.

Appellant next argues that there was error committed in permitting the introduction of certain photographs which "were taken four days after the windstorm occurred." We cannot agree. "As a general rule photographs are admissible in evidence when they are shown to have been accurately taken, and to be correct representations of the subject in controversy, and are of such a nature as to throw light upon it." *Sellers* v. *State,* 91 Ark. 175, 120 S. W. 840.

There was evidence tending to show that these pictures were accurately taken before material changes had occurred and fairly reflected conditions existing following the fall of the wooden elevator and the radio tower and were of such nature as to throw some light on the matter in controversy.

"The admission, relevancy and materiality of photographs as evidence is left to the discretion of the trial judge and, unless that discretion has been abused, his ruling will not be disturbed," (Headnote 5) and in the body of the opinion: "Photographs are admissible in evidence in criminal cases upon the same principles and rules governing their admission in civil cases." *Higdon* v. *State,* 213 Ark. 881, 213 S. W. 2d 621.

In the circumstances, we think no abuse of discretion has been shown.

Next, appellant insists that the testimony of Riley Goodwin was improperly admitted for the reason that he "was not an expert, could not qualify as an expert, and knew nothing about what he was attempting to testify about." This witness testified (from appellant's abstract): "That he is associated with Wincharger Corporation in the erection of towers, has been engaged in this work for about two years, has erected approximately 100 such towers, his experience in such work, 'has been very general'; that since his arrival in Marion (presumably the day before trial), he examined cables and anchor points of the tower, found them to be in good condition; that the manner of construction of this tower is better than usual in that it has 'concrete anchors, which are not very common.' "

He further testified that the radio tower in question was designed to withstand a wind velocity of 100 miles per hour. "I have seen them that have taken it"; that he knew the effect of wind on towers of the same design and construction as the one here involved.

Over appellant's objection, the witness was permitted to testify further as follows: "From your experience or work on towers of similar type and from your knowledge of towers of similar construction and stress will you tell the jury what would cause a tower to fold as that one has in that picture. A. I would say that something like this, it would be caused by some object or something besides a wind, something like an airplane flying into it or something like that or unusual pull on the guy wires from a certain direction. Q. Assuming that the tower in question is standing erect, properly guyed and a heavy object falls upon one of the guy wires, what would be the effect on the section of the tower to which that guy wire is attached? A. In the case of a heavy object falling on a guy wire the guy wire will act as a fulcrum the guy wire would act as a lever and it would cause it to buckle, like you break a stick over your knee. . . . Q. From your knowledge and information acquired in the construction of these towers and towers of similar type to the one in use here, can you tell this jury, under a high wind velocity which would part first the tower, or the buckles, or the guy wires or anchor holders? A. In any instance the guy wires or anchors will give way before the tower, if they don't give way the tower won't fall either. . . . Q. I show you an elevator shaft, which it has been testified is composed of four by four corner posts and is, according to the testimony, some forty feet high and some five to six or seven feet square at the base and at the top of this elevator shaft, according to the testimony, was a pulley to lift the platform or lift that was made out of steel and floored with two-inch boards, what effect would a tower or elevator shaft have falling across the guy wires such as we have here? A. If the weight was sufficient it would act, as I said before, as a

lever on the guy wires beneath and would cause it to pull in that direction and cause it to jack-knife.''

''The determination of whether a non-expert witness has sufficient knowledge of the matter in question or had sufficient opportunity for observation so as to be qualified to give his opinion or conclusion is largely within the discretion of the trial court and not ordinarily reviewable upon appeal, unless clearly erroneous.'' 20 Am. Jur., page 646, § 773.

From the above, we hold that the court did not abuse its sound discretion in permitting witness Goodwin to testify and express his opinion or expert judgment, in the circumstances, for the reason that he had shown himself to possess sufficient qualifications and information to qualify him to state an inference or give his expert judgment.

In 32 C. J. S., under Evidence, Division ''F. Subjects of Skilled Inference or Expert Judgment,'' § 530 d., page 232, the rule is stated as follows: ''A person having special knowledge or skill in matters of mechanics may state an inference or judgment as to such matters. Although the point covered by the inference is precisely the one on which the tribunal is to pass, the inference or judgment of one possessing special knowledge or skill, although he has received only a practical training in matters of mechanics, may be received where, and only where, the triers of fact are not competent to draw the correct inference from the facts. Among inferences which have been regarded as receivable are . . . the cause of certain results; such as a break in a machine or device, the particular operation of mechanical appliances, or defective work by machinery; the reason for an accident; what certain effects indicate; what is required in order to attain a given result; the effect or results of certain things; the strength of materials.''

There was no error, therefore, in admitting this testimony.

Next, appellant contends that the court erred in refusing to permit the jury ''to inspect the timber which

constituted the elevator shaft," or tower. This was also a matter within the sound discretion of the court and we think no abuse thereof has been shown here.

This wooden elevator tower was one that could be and frequently was disassembled and has been under the control and in the possession of appellant for more than a year before the trial in this case. Appellant, Lee, testified: "Q. That tower was torn down and the timber stacked up? A. That is right. Q. Those timbers were not handled with any idea of preserving them in that condition? A. No. Q. They were—have been loaded and unloaded and moved and used for more than one year since the occurrence of that fall, you didn't wrap them or preserve them to keep them from the normal wear and tear from using and hauling? A. No, we didn't."

We think no abuse thereof has been shown.

Finally, appellant argues that the court erred in not giving his requested Instruction No. 3, which he says would have presented to the jury appellant's theory of the case, and further says: "There was ample evidence on the part of the appellant that the elevator was properly constructed, securely braced, properly maintained, and inspected from day to day and that the appellee's damage was not the result of any negligence of the defendant, but was due to an Act of God."

This contention is untenable for the reason that in their instructions, the court fully covered the applicable law to the facts in the case. In Instruction No. 6, the court said: "You are told that if you find that the defendant, his agents, servants, or employees, were negligent in the erection or maintenance of the elevator shaft and that such negligence was a cause of the injuries complained of, then the plaintiff is entitled to recover in this case, unless you find from a preponderance of the evidence that the damage was occasioned by reason of an 'Act of God,' without the concurrence of any negligence on the part of the defendant, his agents, servants, or employees.

"Under the law an 'Act of God' is a violent disturbance of the elements, such as a storm, tempest, or flood, and it must be the immediate, proximate, and sole cause of the loss or damage, not concurred in by the negligence of the defendant, his agents, servants, or employees. Therefore, unless you find that the defendant and his employees were free from fault, and that their acts of negligence, if any, did not contribute to or cooperate with the windstorm in causing the damages herein sued upon, your verdict would be for the plaintiff," and the converse was clearly given in Instruction No. 7 that followed.

The rule of law in this State is well settled by this court in *St. L. S. W. Ry. Co.* v. *Mackey*, 95 Ark. 297, 129 S. W. 78. It was there said: "If the injury was produced by the combined effect of the act of God and the concurring negligence of defendant, then it would be liable therefor. Where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury, and this rule applies where one of the causes is the act of God. This court, in *City Electric St. Ry. Co.* v. *Conery*, 61 Ark. 381, 33 S. W. 426, 31 L. R. A. 570, 54 Am. St. Rep. 262, announced this rule, as stated in the syllabus: 'The concurring negligence of two parties make both liable to a third party injured thereby if the injury would not have occurred from the negligence of one of them only.' (Citing cases.)

"The act of God which excuses must be not only the proximate cause but the sole cause. And where the act of God is the cause of the injury, but the act of the party so mingles with it as to be also an efficient and cooperating cause, the party will be still responsible. In 1 Shear. & Redf. Neg. (4th Ed.), § 39, the rule is thus stated: 'It is universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other cause, for which he is not responsible, including the act of God, . . . the defendant is nevertheless responsible if his negligence is one of the

proximate causes of the damage.' *Vyse* v. *Chicago, B. & Q. Ry. Co.*, 126 Ia. 90, 101 N. W. 736.''

''The act of God which excuses must be not only the proximate cause, but the sole cause.'' *Arkansas Land & Lumber Co.* v. *Cook*, 157 Ark. 245, 247 S. W. 1071, (citing *St. L. S. W. Ry. Co.* v. *Mackey*, 95 Ark. 297, 129 S. W. 78, and *St. L. I. M. & S. Ry. Co.* v. *Steel*, 129 Ark. 520, 197 S. W. 238).

On the whole case, finding no error, the judgment is affirmed.