BARRY, EXECUTOR *v.* BRITTAIN.

5-413                           268 S. W. 2d 12

Opinion delivered May 10, 1954.

[Rehearing June 14, 1954.]

*Clinton R. Barry, Pro Se,* for appellant.

*Warner & Warner,* for appellee.

GRIFFIN SMITH, Chief Justice. Sarah Devlin Brittain, an octogenarian whose mental capacity to execute

a will is not questioned, died in June, 1953, leaving an estate estimated to be worth a little more than $42,000. Her husband, E. F. Brittain, to whom she had been married for almost a quarter of a century, was provided for to the extent of from $11,000 to $16,000. Brittain filed with the executor—Clinton R. Barry—a claim for $5,-145.94 for reimbursement of payments personally made covering doctor bills, medicines, nurses, hospitalization and items of a similar nature beginning with April 16, 1952. The claim was disallowed by the executor, but approved by the probate court with an order directing payment.

Determination of the appeal requires a construction of the words "just debts which I may owe" and their relation to Brittain's contention that it was the purpose of the testatrix to charge her estate with all expenditures relating to the prolonged illness. The pertinent paragraph is: "I direct that all just debts which I may owe, including the expenses of my last illness and of my burial, be paid".

Appellant's position is that it was the husband's primary duty to pay the charges incurred on account of Mrs. Brittain's illness, that he recognized this obligation from time to time, and that in the absence of appropriate language in the will from which an intention to charge the estate with these items should be drawn, there was no indebtedness within Mrs. Brittain's contemplation and no right of repayment.

It is conceded that a court's function is to construe and enforce a will—not to make for the testator another which might appear to be more equitable "or more in accordance with what the court might believe to have been the testator's unexpressed intentions". *Park* v. *Holloman*, 210 Ark. 288, 195 S. W. 2d 546. We are cited to *Morris* v. *Dosch*, 194 Ark. 153, 106 S. W. 2d 159 as authority for appellee's belief that Mrs. Brittain intended that her husband should be reimbursed for what he had spent; but in the Morris-Dorsch case the language of the will was: "After all expenses, burial, inheritance

tax, etc., are paid, I want [the property to go as directed]''. We held that inheritance taxes and certain other items were charges against the estate made so by express language.

We are also asked to apply a rule stated in *Miller* v. *Oil City Iron Works,* 184 Ark. 900, 45 S. W. 2d 36. An item of $1,522.65 was allowed in favor of the administratrix, covering last illness and burial expenses. But there the intestate decedent was responsible for his own bills. The administratrix was his widow and the obligations were of a fixed character. Excerpts from the opinion are: ''Except for funeral expenses, no debts can be created against an estate after death. The debts must be existing at the time of death or arise out of obligations incurred by decedent. Only such claims can be presented for allowance, classification, and payment out of the assets found in the hands of the representative after settlement''. In *Burns* v. *Wegman,* 200 Ark. 225, 138 S. W. 389, we held that a widow had a right to pay the medical and funeral expenses of her husband and claim reimbursement as a creditor of the first class.

In *Beverly* v. *Nance,* 145 Ark. 589, 224 S. W. 956 it was said that ''incident to the duty of a husband to maintain his wife is the corresponding duty of paying for her reasonable burial expenses''.

Two cases decided in 1949—*Simpson* v. *Thayer,* 214 Ark. 566, 217 S. W. 2d 354, and *James* v. *James,* 215 Ark. 509, 221 S. W. 2d 766, reaffirm what Judge Kirby said for an undivided court in *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867: ''. . . Where the husband purchased and paid for land, taking the deed therefor in the name of his wife, the presumption is that his money, thus used, was intended as a gift to her, and the law does not imply a promise or obligation on her part to refund the money or to divide the property purchased or to hold the same in trust for him. His conduct is referable to his affection for her and his duty to protect her against want . . .''

In the case before us Mrs. Brittain directed that "all just debts *which I may owe*" be paid, including the expenses of my last illness and of my burial". Burial expenses are not included in the account.

Appellee testified that he had been employed gainfully for many years, that during the 24 years of his marriage to Mrs. Brittain he earned $80,000 or more, and that his savings from such receipts had been about $5,000.

We think the case here is much stronger in favor of the executor than the court's language in *Harbour* v. *Harbour*, where the husband's money paid for the land and the deed was made to his wife. There was no legal obligation that this be done, and it is entirely possible that the purchaser expected a reconveyance. This, of course, is speculative; but the fact remains that his purchase was held to have been an outright gift.

Brittain was legally obligated to make the payments he did, and when his wife died the estate was not under any duty to repay him. Mrs. Brittain had the financial ability to do so and the mental capacity to express the intent, but the language relied upon by appellee did not accomplish that purpose, hence the judgment must be reversed.

Justices HOLT, MILLWEE, and ROBINSON dissent.

J. SEABORN HOLT, J., dissenting. The decisive question presented is primarily not whether Mrs. Brittain's husband owed her the duty to support her, but whether, under the following plain and unambiguous provision of her will,—"I direct that all just debts which I may owe, *including the expenses of my last illness* and of my burial, be paid,"—created a charge upon Mrs. Brittain's separate property that imposed ultimate liability on her estate. It seems obvious to me that it did.

The uniform rule is that courts must construe and enforce wills as written. Mrs. Brittain, whatever her motive, had a right to dispose of her property as she

saw fit. " '* * * Hence, courts have, with great uniformity, in this class of cases, required the proof that should destroy the recitals in a solemn instrument to be clear, specific, satisfactory, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt,' " *McDaniel* v. *McDaniel,* 220 Ark. 614, 249 S. W. 2d 125.

"The function of a court in dealing with a will is purely judicial; and its sole duty and its only power in the premises is to construe and enforce the will, not to make for the testator another will which might appear to the court more equitable or more in accordance with what the court might believe to have been the testator's unexpressed intentions. 'The appellants are correct in the statement that the purpose of construction is to arrive at the intention of the testator; but that intention is not that which existed in the mind of the testator, but that which is expressed by the language of the will.' *Jackson* v. *Robinson,* 195 Ark. 431, 112 S. W. 2d 417.

"Before the necessity for judicial interpretation of a will may arise there must be found in the language of the will an ambiguity or uncertainty; and where no such ambiguity or uncertainty is found, there is no need for the application by the court of any of the rules for construction. In *Quattlebaum* v. *Simmons National Bank of Pine Bluff,* 208 Ark. 66, 184 S. W. 2d 911, we quoted from Thompson on Wills, 2d Ed., § 210, as follows: 'The purpose of construction and interpretation being the ascertainment of the testator's intention, it follows that where such intention is expressed in the will in clear and unequivocal language, there is no occasion for judicial construction and interpretation, and it should not be resorted to or allowed.'

"The polestar of the court, in construing a will, should always be the intention of the testator; and the will itself is ordinarily the only place to which the court should resort to find such intention. If it be in the will expressed in language that is clear and unmistakable the court should go no further, but should

put in effect the intention of the testator, as thus clearly set forth in his will. *Hoyle* v. *Baddour,* 193 Ark. 233, 98 S. W. 2d 959.

"* * * We have no right to alter, under the guise of construction, the definite and unequivocal disposition of his property as made by him," *Park* v. *Holloman,* 218 Ark. 288, 195 S. W. 2d 546.

"The cases all agree that the testator's intention can be gathered only from the will itself and that extrinsic evidence is not admissible to prove an intention in regard to the disposition of the property not expressed in the will." *Duensing* v. *Duensing,* 112 Ark. 362, 165 S. W. 956.

In *Morris* v. *Dosch,* 194 Ark. 153, 106, S. W. 2d 159, the will provided: "After all expenses, burial, inheritance tax, etc., are paid, I want the balance of my Estate to be given to" certain charities. The trial court directed the trustees to pay inheritance taxes out of the corpus of the estate. Affirming, we said: "In this we think the court was correct. It is in exact compliance with the will. It says: 'After all expenses, burial, inheritance tax, etc., are paid, I want,' etc., as copied above. The obligation to pay these taxes and expenses was not placed on appellees further than it might reduce the income from the estate. The direction comes in a sentence referring to expenses that came shortly following the death of the testator, such as burial, court costs, etc. The payment of the inheritance taxes could not be postponed until after the death of appellees and he had the right to direct its payment from the body of his estate.

" "* * * the general rule is that the paramount principle in the construction of wills is that the general intention of the testator, if not in contravention of public policy or of some rule of law, shall control; and such intention is to be ascertained from the language used as it appears from a consideration of the entire instrument. Words and sentences used are to be con-

strued in their ordinary sense so as to arrive at the real intention of the testator. (Citing cases).' "

It appears to be the uniform rule that a married woman may bind her separate property for medical expenses for herself, either by express provision, conduct, or words from which a promise may be inferred.

In 41 C. J. S. (Husband & Wife), § 340, p. 827, this rule is stated: "A married woman may, however, as a general rule, bind her property for medical services for herself or the family, either by express provision or by conduct or words from which a promise may be inferred." 30 C. J., § 627, p. 923 states the same rule.

In *Security Bank & Trust Company* v. *Costen*, 169 Ark. 173, 273 S. W. 705, the wife was allowed to recover her husband's burial expenses. The will did not require her to pay such debt and for this reason it was held that it was not her obligation and could not be charged against the property she took under her husband's will. We there said: "If the person who incurs the expense or advances the money to pay it is not a mere volunteer who acts officiously and without interest in the estate of the decedent, the charge against the estate inures to his or her benefit. (Citing cases). Under the circumstances of this case, it cannot be rightly said that the widow was a mere volunteer and acted officiously and without interest in paying the funeral expenses of her deceased husband. The payment was in settlement of the claim of the undertaker, which would have been a legal claim against the estate, and the act of the widow in making the payment was not a discharge of the obligation of the estate, but was a mere transfer of the obligation by way of subrogation to the widow. The last will and testament of the deceased husband did not cast upon the widow the burden of paying the debts of the estate, and she was therefore under no obligation to pay the debts out of her own estate or out of the interest which she took under the will of her husband, for no such condition or burden was imposed upon her by the terms of the will."

The implication, it seems to me, to be clear that where, as here, the wife's will expressly directs payment of "expenses of my last illness" from her estate, the husband would be entitled to reimbursement upon payment by him.

In 27 Am. Jur. (Husband and Wife), § 458, p. 57, in stating that the Married Women's Acts do not relieve the husband's primary liability to pay funeral expenses of his wife, it is said: "The husband may be relieved from such primary liability, however, by the will of his wife; a provision in a will to such effect is construed as a legacy."

13 R. C. L., § 248, p. 1214, states the same rule as follows: "Where a married woman by her will expressly charges her separate estate with the payment of her funeral expenses, the husband is entitled to reimbursement from such estate in case he has paid such charges."

"A married woman may, by providing in her will that her funeral expenses shall be paid out of her own estate, relieve her husband from liability; * * *," 41 C. J. S., (Husband and Wife), § 61 at p. 529.

In *Picketts' Est.* v. *Pickett* (Md.), 158 Atl. 29, the wife's will directed her estate to pay funeral expenses. The court held that the husband as administrator was entitled to allowance of such expenses, although but for such direction the husband would be primarily liable therefor. The court said: "Apart from the direction in the will on that subject, the husband's primary responsibility for such an expense would debar him from charging it against his deceased wife's estate. (Citing cases). But it was legally permissible for the wife to impose that obligation upon her estate, and thus relieve her husband of it, by suitable provision in her will. When a testamentary purpose to that end has been definitely expressed, it should be given its due effect."

In *Jackson as Executor* (N. Y.) 61 Howard's Pr. Rep. 402, the court held that the duty of burying a wife rests on the husband, but the wife may charge

by her will her own separate estate with funeral expenses and said: "* * * But the will of the testatrix itself puts the subject at rest, for she orders and directs in the first paragraph thereof, that all her debts and 'funeral expenses' shall be paid. The duty, therefore, is cast upon the executors to pay these charges. Although it may be true that the duty of burying the body of his deceased wife rests upon her husband, yet a wife may charge, through her last will and testament, her own separate estate with the expenses of her funeral."

"But where, as in the present case, the wife by will directs the payment of her funeral expenses out of her estate, the ultimate liability will fall upon her estate rather than upon the husband, and the husband is entitled to reimbursement from her estate in case he has paid such charges," *Watt* v. *Atlantic Safe D & T Co.* (N. J.), 112 Atl. 186.

I think the great preponderance, if not the undisputed, testimony supports the chancellor's finding in appellee's favor that the claim was for expenses expended by him for Mrs. Brittain's last illness for the period March 17, 1952 up to her death, and that no credit should be allowed thereon and that the claim should be allowed in full.