McCORMICK v. SEXTON

5-3429                                                386 S. W. 2d 930

Opinion delivered February 22, 1965.

*Thomas L. Cashion* and *Wright, Lindsey, Jennings, Lester* and *Shults,* for appellant.

*Phillip Mansour,* Greenville, Miss., and *William H. Drew* and *John F. Gibson,* for appellee.

ED. F. McFADDIN, Associate Justice.  Although there were a number of other parties in the Trial Court, only five are before us on this appeal.  The appellants are Walter D. McCormick, and his employer, Ramsey Towing Company.[1]  The appellees are Emory D. Sexton, Mrs. Mary Allday, and Mrs. Martha Allday.

Emory D. Sexton, appellee, driving his Buick automobile, had crossed the Greenville Bridge over the Mississippi River, and was proceeding toward Lake Village, Arkansas.  His wife was in the car with him.  Walter D. McCormick, driving a Chevrolet station wagon (and admittedly on a mission for Ramsey Towing Company) was following the Sexton Buick.  He was alone.  James D. Allday, driving the Plymouth of his daughter-in-law, Mrs. Allday, was proceeding from Lake Village to cross the Greenville Bridge; and he was accompanied by his daughter-in-law, Mrs. Mary L. Allday.  There is a dispute as to the sequence of events resulting in the traffic mishap.  One party contends that the Plymouth driven by Allday crossed the center line and collided with the Buick driven by Sexton, and that the front of the Chevro-

---

[1] The name of the company was originally McCormick-Ramsey Towing Company, but the name was changed during the course of the litigation and for brevity we use the name as it existed at the time of the trial below.

let driven by McCormick subsequently struck the rear of the Buick. Another party contends that the Chevrolet driven by McCormick first struck the rear of the Buick and caused it to cross the center line and strike the Plymouth. At all events, there was a three-car traffic mishap in which Mr. Allday and Mrs. Sexton were killed and damages suffered by some of the other parties. Then this litigation began.

Mr. Sexton, driver of the Buick, filed action against Mr. McCormick, driver of the Chevrolet; also against the estate of James D. Allday, driver of the Plymouth, and Mary Allday, owner of the Plymouth. Sexton sought damages for the death of his wife, for his own personal injuries, and for property damages. He alleged that Allday, driver of the Plymouth, crossed the center line and struck the Sexton Buick, and that McCormick in the Chevrolet simultaneously struck the rear of the Sexton Buick.[2] Thus, Sexton claimed that there was concurrent negligence by McCormick and Allday, and sought recovery from both McCormick and the estate of Allday.

Mary L. Allday denied all negligence and cross complained against Walter D. McCormick and Ramsey Towing Company, claiming: (a) that Walter D. McCormick was at the time and place of the mishap, a servant and in the scope of the employment of the Ramsey Towing Company; (b) that Walter D. McCormick ". . carelessly and negligently and with great force and violence struck the rear of the Buick (Sexton automobile) and knocked it into the path of the (Plymouth) vehicle driven and operated by James D. Allday." Joining in the said cross complaint against McCormick and the Ramsey Towing Company were Mrs. Martha Allday, widow of James D. Allday, and also the children of James D. Allday, all of

---

[2] The exact allegation made by Sexton was: ". . and simultaneously with the Plymouth automobile striking his automobile from the front, the 1962 Chevrolet following behind plaintiff struck plaintiff's automobile from the rear, demolishing plaintiff's automobile." The allegation as to McCormick's negligence was: "Walter D. McCormick was negligent in following too close behind the plaintiff's automobile, contrary to law; was negligent in failing to keep a proper lookout; was negligent in failing to keep his automobile under proper control, and failing to yield the right-of-way to vehicles in front."

them seeking damages against McCormick and the Ramsey Towing Company.

Walter D. McCormick answered the complaint of Sexton with a general denial; and joined with Ramsey Towing Company in answering the cross complaint of the Alldays with (*inter alia*) general denial of all negligence. In the course of the proceedings it was shown that there was no administration on the estate of James D. Allday, and for that reason all claims for or against his estate were dropped.[3]

Trial of the three-cornered lawsuit to a jury resulted in verdicts and judgment thereon as follows:

For Emory D. Sexton against W. D. McCormick ........................................................$90,000.00

For Mrs. Martha Allday against W. D. McCormick and Ramsey Towing Company ........................................................$15,000.00

For Mrs. Mary L. Allday against Walter D. McCormick and Ramsey Towing Company ........................................................$ 300.00

From the said judgment entered on these verdicts there is this appeal by Walter D. McCormick and Ramsey Towing Company in which five points are urged:

"I. Appellants were entitled to judgment in their favor and against all Appellees, as a matter of law.

"II. The court erred in admitting certain testimony that was in the nature of a reconstruction of the sequence of events from physical facts.

"III. The Court erred in admitting certain testimony on the issue of damages.

"IV. The Court erred in giving certain instructions requested by Appellees.

"V. The Court erred in refusing certain instructions requested by Appellants."

_____

[3] There was an attempted removal to the United States District Court for the Eastern District of Arkansas; but that tribunal ordered a remand to the Chicot Circuit Court.

## I.

In the first point the appellants claim that there was no evidence of any negligence by Walter D. McCormick and that they were entitled to an instructed verdict in their favor. With this contention we cannot agree. Mr. Sexton testified that he would estimate that the Plymouth car was 50 to 75 yards in front of him when he was struck from the rear; and that at such time he lost consciousness. Thus, Mr. Sexton testified in the trial that his car was first struck from the rear by the McCormick car when the Allday Plymouth was still 50 to 75 yards in front of him. If that testimony be true then the first act of negligence was that of McCormick. The evidence of other witnesses tended to show that the Sexton car, struck on the right rear, was projected forward to the left. The pictures of the damage to the left front position of the McCormick car and the right rear of the Sexton car show the force of the impact. Whether the collision occurred in the traffic lane of the Allday car or in the traffic lane of the Sexton car, was a disputed issue. There was testimony both ways. But the effect of Sexton's testimony was that the negligence of McCormick in striking the car from the rear triggered the entire collision. With such evidence in the record, the Trial Court was correct in refusing to give an instructed verdict for McCormick and the Towing Company. The case at bar differs from that of the Superior Forwarding Company[4] case in that Sexton's testimony definitely related to the vehicle following him. Sexton's testimony was bitterly assailed; but it was for the jury, and not the Court, to decide as to the weight and effect of such testimony. The Trial Court was correct in refusing to give an instructed verdict for McCormick and the Towing Company.

## II.

In their second point the appellants claim the Court committed error in allowing certain testimony to go to

---

[4] See *Superior Forwarding Co.* v. *Garner*, 236 Ark. 340, 366 S. W. 2d 290.

the jury from the witnesses, H. L. McKensey and Roy Hogg. We find no merit in this contention as regards either of these witnesses; but in view of the likelihood of a new trial (because of our holding on Point IV) we discuss the evidence.

(a) H. L. McKensey (called as a witness by Sexton) testified that from 1933 to 1954 he was employed in a body shop repairing wrecked cars; that from 1954 to the present he had been employed as an automobile damage appraiser; that from 1933 to the present he has examined about 800 damaged cars each year; that he examined the damages to the Sexton Buick; that the damage to the rear end of the Buick was $653.97 and the damage to the front end was $1800.00; that he inspected the interior of the Sexton car; and that he found the front seat torn loose and the front seat track bent backwards. Then he was allowed to testify as an expert that such damage to the front seat would be caused by a blow from the rear of the car and not from a blow to the front. The objection goes to this testimony as an opinion expert, and appellants claim that such opinion evidence was improper under these cases: *Casey* v. *Hudspeth*, 229 Ark. 735, 318 S. W. 2d 137; *Henshaw* v. *Henderson*, 235 Ark. 130, 359 S. W. 2d 436; *Waters* v. *Coleman*, 235 Ark. 559, 361 S. W. 2d 268; and *Reed* v. *Humphreys*, 237 Ark. 315, 373 S. W. 2d 580. We disagree with the appellants. The cited cases are on an attempted reconstruction of the mishap by an expert when eyewitnesses are available. What the witness McKensey did was to testify to the damage to the front seat and give his opinion as an expert as to what caused such damage. This was proper. *Lee* v. *Crittenden County*, 216 Ark. 480, 226 S. W. 2d 79.

(b) The witness Roy Hogg—a State Policeman called by Sexton—testified that he investigated the mishap and saw the vehicles at the scene. He was allowed to testify as to skid marks on the pavement and, over appellants' objection, was allowed to say that some of the skid marks were made by a flat tire. It had been shown that one of the tires on appellants' vehicle had a

blowout in the mishap. It was shown that this officer had been investigating traffic collisions for five years and had attended various schools of instruction on such matters. His testimony was proper as to the skid marks and as to the difference in a mark made by a flat tire and that made by an inflated tire. What we have said about the testimony of the witness McKensey applies also to the witness Hogg.

## III.

The appellants' third point relates to admitting testimony on the matter of damages. Since we are reversing (because of Point IV) it is well that we point out that Mr. Sexton could recover for the funeral expenses he paid for his wife, since it is the duty of the husband to pay such expenses. (*Beverly* v. *Nance*, 145 Ark. 589, 224 S. W. 956; *Barry* v. *Brittain*, 223 Ark. 613, 268 S. W. 2d 12; and see annotation in 82 A.L.R. 2d p. 873: "Liability for funeral expenses of married women.") But Mrs. Allday could not recover for the part of the funeral bill and monument expense which she paid for Mr. Allday, because it is not the duty of the wife to pay such expenses. Such expenses for Allday's estate could be recovered only by an administrator. (*Ry. Co.* v. *Sweet*, 57 Ark. 287, 21 S. W. 587; see also annotation in 57 A.L.R. 400: "Wife's liability for husband's funeral expenses"; and see 27 Am. Jur. p. 59: "Husband and wife" § 460.)

## IV.

In their fourth point appellants object to instructions; and we find one instruction that was fatally erroneous. It was the Instruction No. 13 requested by appellee Sexton and given by the Court. We copy it:

"The court instructs the jury that as a matter of law in this case, Emory D. Sexton, plaintiff, was not negligent nor at fault nor to blame for his injuries; and if you believe from a preponderance of the evidence in this case that his injuries were due to the negligence of both Walter D. McCormick and James D. Allday, deceased, then it is your sworn duty to find for plaintiff against

Walter D. McCormick for the whole injury, even though you may believe from the evidence that the negligence of either James D. Allday of Walter D. McCormick was greater than that of the other.''

In this instruction the Court told the jury that Sexton was free of negligence. That instruction was entirely erroneous. McCormick testified that he did not hit the Sexton Buick until after Sexton's car had collided with the Allday car. The witness Kolb testified that he saw Sexton's car cross the center line and into the traffic lane of the Plymouth car. The jury could have inferred from the testimony of Kolb that Sexton's car crossed the center line before the collision. With such evidence in the record, it should have been left to the jury to say whether Sexton, as the driver of the Buick, was guilty or negligence in crossing the center line before the McCormick car struck him.

As we have heretofore said, there was a dispute as to exactly where the collision took place. There were skid marks testified to by the witness Hogg from which the jury could have found that the traffic collision occurred in the lane of the Plymouth car; and there was the testimony of Kolb from which the jury could have found that the Sexton vehicle crossed over the center line into the traffic lane of the Allday car *before* the McCormick car struck the Sexton car. Certainly with the testimony in conflict, the Trial Court should have refused to give an instruction that Sexton was entirely free of all negligence. His negligence was a jury question, just like the negligence of McCormick was a jury question; and this Instruction No. 13 necessitates a reversal of this cause.

Since the cause is reversed and will be remanded for a new trial, we also think it proper to call attention to the language in the instruction which says, ''. . it is your sworn duty to find . .'' The use of words ''sworn duty'' should not be contained in an instruction like this. The jury had been sworn according to law. A court can remind them of their duties in a separate instruction; but to emphasize in an instruction like this that it is the

jury's "sworn duty" to find for the plaintiff, is to use words that tend to indicate the court has a deep feeling in the matter. It would unduly prolong this Opinion to discuss the other assignments concerning other instructions given or refused. We believe from what we have said herein that on a retrial instructions may be framed so that any errors, if there by any, regarding such instructions, are not likely to occur.

For the error of the Court in giving the Instruction No. 13, the judgment is reversed and the cause is remanded.