H. T. Brady v. The City of Springdale, Arkansas, a Municipal Corporation

5-4906        441 S.W. 2d 81

Opinion Delivered May 26, 1969

1104

*Lewis D. Jones* for appellant.

*Crouch, Blair, Cypert & Waters* for appellee.

J. FRED JONES, Justice.    This is an appeal by the landowner from a judgment of the Washington County Circuit Court denying his motion for a new trial in a condemnation case.    The City of Springdale, through eminent domain, condemned a construction easement 50 feet wide and a permanent easement 15 feet wide for a sewer line across ten acres of the appellant's tract of land containing 114 acres.    By answer and counterclaim the appellant alleged damages in the amount of $25,000 for the taking of the easement, and $20,000 further damage in diminished value of the remaining land because of water and air pollution and noxious odors arising from a sewage disposal plant adjacent to appellant's property.    The appellant also alleged damage in the amount of $5,000 for breach of contract in connection with fencing, paving and preservation of a spring in consideration for the grant of the easement.

A jury trial resulted in a judgment for the appellant landowner in the amount of $750 and upon appeal to this court from a judgment denying a motion for a new trial, the appellant relies on the following points for reversal:

> "The court erred in overruling defendant's motion for a new trial for the reason that the verdict was clearly against the preponderance of the evidence.
>
> The jury's verdict as to the damages was clearly inadequate and should be set aside with a new trial ordered."

Both of the appellant's points were included in his motion for a new trial based upon his contention that the verdict was against the preponderance of the evidence. In the case of *Taylor* v. *Grant Lumber Co.*, 94 Ark. 566, 127 S.W. 962, this court said:

"Trial courts have large discretion in the matter of granting new trials, especially upon the weight of the evidence, and this court will not interfere with such discretion unless it be made to appear that it was improvidently exercised."

The reason for the rule is stated in *Blackwood* v. *Eads*, 98 Ark. 304, 135 S.W. 922, wherein this court said:

"Where there is decided conflict in the evidence, this court will leave the question of determining the preponderance with the trial court, and will not disturb his ruling in either sustaining a motion for new trial or overruling same. * * * The witnesses give their testimony under the eye and within the hearing of the trial judge. His opportunities for passing upon the weight of the evidence are far superior to those of this court. Therefore his judgment in ordering a new trial will not be interfered with unless his discretion has been manifestly abused."

The only question before us on this appeal is whether the trial court abused his discretion in refusing to grant a new trial, and in answering that question, we do not consider preponderance of the evidence in any case. Where the motion is denied, we only consider the legal sufficiency of the evidence to support the jury verdict, and if there is any substantial evidence to support the jury verdict, we do not disturb the trial court's action in denying a motion for a new trial. *Price-Snapp-Jones Co.* v. *Brown*, 184 Ark. 1143, 45 S.W. 2d 517; *Chaney* v. *Missouri Pacific Railroad Co.*, 167 Ark. 172, 267 S.W. 564. *Mueller* v. *Coffman*, 132 Ark. 45, 200 S.W. 136.

1106

So the question here boils down to whether there was any substantial evidence to support the jury verdict. The appellant, Brady, testified that his entire farm consists of 114 acres; that prior to the present taking there was an underground sewer over the same area. Much of Brady's testimony concerned a breach of contract he alleged in his counterclaim. The contract provided for payment of $3,500 for the easement, and for the reseeding of the damaged surface area. It also provided for the removal of rocks and other debris and for the erection of some fence. The appellee also agreed to build and surface a designated access road into appellant's property and to install some tile in a spring on the property. In proof of his damages on the alleged breach of contract, the appellant testified that it would cost $200 to reseed the easement area; that it would cost $200 to remove the rock and debris left by the operation and he estimated the before and after value of his entire farm as a result of the destruction of his spring, the taking of the easement, and the offensive odors emanating from the sewage disposal plant at $100,000 before the taking and $55,000 after the taking.

Dale Killian, a real estate broker, relying on his general knowledge and experience in the sale of real estate, and basing his opinion on the area taken and offensive odors emanating from the sewage disposal plant, estimated the value of the entire track of land at $70,000 before the construction of the sewer line and disposal plant, and at $50,000 after the facilities were installed. He testified that there was an offensive odor from the sewage disposal plant when he was on the property but that his knowledge as to odor prior to the construction of the plant in 1964, would be hearsay.

Candida Crane testified that she works for the appellant and lives about four miles west of the property involved. She testified that she had detected odors from the sewage disposal plant while she was on the appellant's property and that the odor was detected at her

home four miles away. She testified that the odor was worse at some times than it was at other times.

King Wheeler, a real estate dealer, testified that he had been familiar with the property since 1943. He testified that its highest and best use prior to 1964 would have been for a gentlemen's estate or a boy's camp, but since the construction of the sewage facility across the land, its best use would be for grazing. He placed the before and after value at $74,900 prior to 1964 and $51,866 after the facilities were installed. He testified that the odor from the disposal plant had been apparent on appellant's property since 1964, but not before that date.

Mrs. Harry Wobb testified that she had carried mail to and by the appellant's property for a number of years and that the odor from the sewage disposal plant had been noticeable during that period of time. She testified that it is possible that the odor may be less now than it was in 1958, but she doesn't think so.

Clifford Houston testified that his farm adjoins the appellant's farm and that he started noticing the odor from the sewage disposal in September or October of 1967. He testified that the odor was worse in these fall months. He had lived on his farm since 1948.

Mr. Dave Taylor testified that he was an inspector for the sewer and water department of Springdale and helped install the plant. He testified that prior to 1964 the sewage was partially treated at another location, and that the treatment was completed at the present location in older and smaller facilities. He testified that the partially treated sewage had higher odor producing content than does the raw sewage now being treated.

L. M. Goodwin, a consulting engineer who designed the disposal plant, testified that when the new plant was first installed it produced considerable trouble from offensive odors, but that in 1966 additional equipment was

installed and that there had been no significant odor emanating from the plant since the fall of 1966. He testified that he had been in the vicinity of appellant's property many times since 1966 and was unable to detect any significant odor from the plant.

Casey Forbes, superintendent of water works and sewers for the appellee, testified that a serious odor problem did develop in 1966, and that this problem had been eliminated by the installation of new odor eliminating equipment which has worked very satisfactorily. He testified that there is no significant odor in connection with the plant at the present time and that the plant does not emit an odor since the new equipment was installed in 1966.

O. J. Snow, a real estate broker and appraiser, testified that in his opinion the before value of the property was $75,750 and the after value was $75,000. He testified that he visited the plant and also the appellant's property; that he detected some odor at the plant but none at all on the appellant's property.

The jury not only saw the witnesses and heard them testify in this case, the jury went onto the premises and viewed the alleged damage. We may reasonably assume that the jury also sampled the air over appellant's land for offensive odors. The preponderance and weight of evidence is for a jury to consider in reaching its verdict and is for the trial court to consider when the verdict is questioned as being against the preponderance of the evidence. When a circuit court judgment is questioned on direct appeal to this court, we examine the record for any substantial evidence to support the judgment, or the verdict upon which it is rendered, and we can do no more than that in determining whether the trial court abused its discretion in overruling a motion for a new trial on the ground that the verdict is against the preponderance of the evidence.

The alleged damages for breach of contract were apparently abandoned by the appellant in favor of the other damages he alleged. No jury instruction on breach of contract was given by the trial court nor requested by the appellant. The appellant relied most heavily on the difference in the market value of his land before and after the easement was taken and the present sewage disposal plant was constructed and placed in operation in 1964.

Aside from the approximate one-third acre in the easement actually taken, the appellant's only other alleged damage to which the evidence was directed, pertained to reduction in the value of his land because of destruction of a spring on the property and air pollution over the property consisting of offensive odors from the appellee's sewage disposal plant. The evidence on these two items was in substantial conflict. The conflict in the evidence as to the destruction of the spring ranged all the way from a clear year-round running spring which was covered and destroyed, as testified to by the appellant, to no spring at all, but a damp place in wet weather where a tree was pushed out of the ground and a tile pipe inserted, as testified to by Johnnie Jones. The evidence pertaining to air pollution ranged all the way from constant and unbearable odor, as testified to by the appellant, to no odor at all as testified to by Messrs. Forbes and Snow.

There was substantial evidence to support the jury verdict in this case and we are unable to say that the trial court abused his discretion in refusing to grant the appellant's motion for a new trial.

Affirmed.