FARMERS EQUIPMENT COMPANY, A Corporation
*v.* John MILLER Jr. and Malcolm MILLER

5-5835                                    482 S.W. 2d 805

Opinion delivered July 17, 1972

*Hout, Thaxton & Hout,* by: *Dean A. Garrett,* for appellant.

No brief for appellees.

JOHN A.FOGLEMAN, Justice. The plaintiff-appellant, Farmers Equipment Company, sold a crawler tractor with dozer blade to the defendant-appellees, John Miller, Jr., and Malcolm Miller, his father, for the sum of $11,000 to be paid in installments, and Farmers retained a security interest in the equipment. Upon default by the Millers, Farmers repossessed the equipment and sold it for $1,800 at public sale. Farmers applied the $1,800 less expenses on the $6,582.77 balance still owed by the Millers and brought suit against the Millers in the Izard County Circuit Court for the deficiency in the amount of $4,782.77.

Appellees defended upon the ground that the disposition of the collateral was not commercially reasonable as required by the Uniform Commercial Code and that appellant did not proceed in good faith.

A jury trial resulted in a judgment in favor of the Millers and on appeal to this court appellant relies on the following points:

The trial court erred in allowing the testimony of Travis Grissom, witness for appellees, as to the market value of appellees' dozer.

The trial court erred in allowing Harliss Reeves, witness for appellees, to testify as to an alleged conversation with a person in authority at appellant's place of business.

The trial court erred in failing to direct a verdict in favor of appellant at the close of the evidence and in overruling appellant's motion for judgment notwithstanding the verdict.

The verdict is not sustained by sufficient evidence, and/or is contrary to law and appellant's motion for a new trial should have been granted.

We find no reversible error.

Appellees sought to show the value of the bulldozer

through the testimony of Travis Grissom. Appellant objected to Grissom's opinion of the market value of the machine on the basis that the proper foundation was not laid by a showing that Grissom had an adequate knowledge of values. Grissom started working with heavy equipment during his service with the army engineers during the years 1953 to 1955 and had operated this kind of equipment ever since. He was employed by John Miller, Jr., as a bulldozer operator about February 1966. He actually operated the machine involved here until the day it was repossessed, so he was very familiar with it. He stated that it was then in good condition, except for the tracks and sprockets and left side armor. He claimed to have knowledge of the market value of a bulldozer of the type involved on the date of repossession, based upon what was said when he went with others shopping for this kind of machinery and from his own knowledge of what others had to pay for equipment on various jobs. The determination whether a nonexpert witness has sufficient knowledge of the matter in question or has had sufficient opportunity for observation to be qualified to state an opinion lies largely within the sound judicial discretion of the trial judge and is not reviewable on appeal unless so clearly erroneous as to manifest an abuse of discretion, even though we might have decided differently if the question had been presented to us in the first instance. *Lee* v. *Crittenden County*, 216 Ark. 480, 226 S.W. 2d 79. *Firemen's Ins. Co.* v. *Little*, 189 Ark. 640, 74 S.W. 2d 777. The same principles apply to market value witnesses. *Lazenby* v. *Arkansas State Highway Commission*, 231 Ark. 601, 331 S.W. 2d 705; *Housing Authority of City of Little Rock* v. *Winston*, 226 Ark. 1037, 295 S.W. 2d 621; *Ft. Smith & Van Buren Bridge Dist.* v. *Scott*, 103 Ark. 405, 147 S.W. 440.

Even though the evidence of qualifications of the witness may now seem meager, we are unable to say that the circuit judge abused his discretion in admitting this testimony. We do not consider *Little Rock & Ft. Smith Ry. Co.* v. *Alister*, 62 Ark. 1, 34 S.W. 82, relied upon by appellant to indicate a different result. There it was clearly deminstrated that there was no basis for the opinion of a witness of the estimated cost of certain excavation

work. He testified, on cross-examination, that he had never done any such work, either as a laborer or contractor and that what he stated as the price was only guesswork. We cannot say that it was unreasonable for the trial court to accept the statement of one, who had operated equipment of the type involved for over 15 years, that he had been sufficiently exposed to information about the selling price of equipment of that type to possess knowledge of its market value.

We cannot say that there was error in the admission of the testimony of Reeves. Appellant's objection was that the testimony of Reeves, as to statements made by a person he could not specifically identify, was hearsay, and the appellant was deprived of the opportunity to cross-examine the person making the statements.

Reeves was foreman on the job from which the bulldozer was repossessed and had driven it on occasion. At the time of the trial, he was operating a similar type tractor he had purchased. He stated that he had shopped around a great deal before making the purchase, and had attempted to buy the Miller "dozer" from appellant at Newport about a week or 10 days after the repossession. Miller had informed him that the unpaid balance owed was something over $6,000. According to Reeves, he went to appellant's place of business where he was told by someone whose name he could not remember, but who he thought "was the main guy in the company" at the time, that it would take $8,750 to buy the bulldozer. Reeves said that when he protested that this was too much, this same person said "We will sell it to somebody," and Reeves then offered to leave his name, address and telephone number so that he could be called whenever the company got ready to sell the equipment, but did not offer a specific sum for the tractor. Reeves testified that this person said, "I don't give a damn if we don't get $2,000 on it, we'll get our money" and that he had "two guys" on the note.

After appellant's initial objection, Reeves responded in the affirmative to a question whether the person making these statements was in charge of Farmers Equipment

Company and was negotiating with Reeves when he was trying to purchase the equipment. Reeves further identified the speaker as "top guy there that day," "a medium sized guy" with "sort of brown" hair. Reeves claimed that the conversation lasted about five minutes and that it took place in this man's office. When asked if the person showed him any papers, he responded "I think he thumbed through some papers and came up with a price, but I am not sure about that."

We find no real similarity between this testimony and that held inadmissible in *Taylor* v. *Samuel*, 238 Ark. 70, 378 S.W. 2d 200, relied upon by appellant. There, an attempt was made to prove the agency of two unidentified individuals making delivery of lumber by the statements of these individuals to the witness at the time of the delivery that they were making delivery for the alleged principal. That testimony was clearly hearsay and inadmissible as evidence of the agency.

The real question involved here is whether the witness sufficiently identified the person with whom he talked about buying the bulldozer to give rise to an inference that that person was an agent of the company with authority to speak upon the subject. Although the details of the actions of this person might have been more thoroughly developed, we do not think it would be unreasonable to draw an inference from Reeves' testimony that he spoke to a person who occupied an office at appellant's place of business and who acted as though he were in charge there, that the conversation took place in that person's office, where there were papers through which this person thumbed while talking about the price for the piece of equipment, and that this person had sufficient knowledge of the transaction to know that there were two signers of the purchase money note who were liable for any deficiency. We feel that this identification is sufficiently definite to permit consideration of the testimony by a jury, which would determine the weight and credit to be given to it. We are strengthened in our belief by reason of the fact that Buddy Black, appellant's current manager, called in rebuttal, when asked if he could identify the person Reeves was referring to by the description given, answered "average,

brown headed fellow—I am sure he just have been talking about Burton Ford." Black had previously identified Ford as the company's manager at the time of the alleged conversation and himself as Ford's assistant. Black also testified that the officers and stockholders took no part in the management of this company until several months after the transaction giving rise to this litigation. It was only necessary that the information as to the identity of the speaker be sufficiently definite that the evidence as to his authority and as to the making of the statements might be rebutted. See *Dudding* v. *Thorpe,* 47 F.R.D. 565 (D. C. Pa. 1969). Before Reeves testified, Black stated that he would not doubt Reeves' testimony if Reeves said that he had offered $6,000 for this piece of equipment. It is true that after Black made the above-quoted statement on rebuttal, he described Ford as a "pretty good sized fellow, blond headed and wears glasses." As we have said, weight and credibility were in the jury's province. It is significant that appellees did not seek to prove the truth of the statements allegedly made. They only sought to prove that they were made.

The remaining points argued by appellant really raise the question whether there was any substantial evidence that the sale of the repossessed bulldozer was not made in a commercially reasonable manner as required by Ark. Stat. Ann. § 85-9-504 (3) (Add. 1961) or that appellant did not proceed in good faith as required by § 85-1-203 (Add. 1961). It relies upon our holding in *Goodin* v. *Farmers Tractor & Equipment Co.,* 249 Ark. 30, 458 S.W. 2d 419, and the provisions of Ark. Stat. Ann. § 85-9-507 (Add. 1961). Particular emphasis is put upon the statement in the statute that the fact that a better price could have been obtained by a sale at a different time or in a different method is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. It is significant, however, that there is evidence on this issue relating to other facts.

The bulldozer was repossessed on October 1, 1969, at a time when the bank to which the contract of sale was assigned by appellant was pressing appellant for money. Although Black testified that the equipment was badly in need of repair at the time of repossession, this testimony

was controverted by Reeves, Grissom and Miller. Miller said that the necessary work to put the tractor in excellent condition would have cost only $300. Black testified that appellant attempted to dispose of the machine by private sale for the balance due ($6,582.76) at first and later for three or four thousand dollars and had numerous people look at it but received no offers or bids before an auction sale held on April 4. Black said appellant "waited and waited and waited" until the bank forced it to hold the public auction. He testified that the original asking price scared everyone off to begin with. Although Black testified that a lot of those who viewed the tractor would have liked to have it, none wanted to buy under the circumstances and preferred to await a public auction. He could offer no explanation of appellant's inability to sell the bulldozer at private sale. The decision to proceed by public auction was made only 10 days before the sale. While Black said that he called local implement dealers and farmers in the area to advise them of the public sale, he only called those he thought would be interested who had not already been by the place while efforts were being made to sell by private sale.

The successful bidder at the auction offered $1,800. Although Black testified that he was familiar with the normal commercial practices of dealers in this type of equipment in the area and practices in selling this type of equipment he did not state what they were. The notice of sale was headed "Sold at Public Auction!" and Black admitted that some who called were confused or misunderstood this heading and questioned him about it.

Black was of the opinion that the bulldozer was worth only $1,800 at the time of the sale, but admitted that his opinion was based on the amount realized at the public sale. He placed the costs of repairs at the time of the sale at $800. While Black stated the opinion that the bulldozer was worth $3,000 to $4,000 at the time of repossession, he estimated that repairs costing $1,200 or $1,300 would have been needed to put the equipment in condition to have this market value. John Miller, Jr., said that the bulldozer was worth from $8,000 to $8,500 when repossessed.

This case may be distinguished from *Goodin* in several respects. The alleged offeror in that case could not even approximate the date of his offer to a company sales-man. The adequacy and propriety of the notice of sale there were not questioned. The published notice in this case may have been quite misleading in that it might have been taken by a casual observer to report a sale that had already been held. In *Goodin,* testimony that the condition of the equipment was "very poor—close to scrap" was not controverted.

Furthermore, if the jury believed that appellant's manager made the statements attributed to him by Reeves, it could well have decided that appellant did not act either in good faith or in a commercially reasonable manner in disposing of the security. Appellant had the burden of showing the amount of the deficiency it was entitled to re-cover. *Universal C.I.T.* v. *Rone,* 248 Ark. 665, 453 S.W. 2d 37. Since appellees defended upon the ground that appel-lant did not proceed in accordance with the provisions of the code, appellant had the burden of proving that it proceed in a commercially reasonable manner. *Investors Acceptance Co.* v. *James Talcott, Inc.,* 454 S.W. 2d 130 (Tenn. Civ. App. 1969, cert. denied 1970.) In view of the question about the notice, the total absence of evidence about normal commercial practices in disposition of this type of collateral, the length of the period of time elapsing between repossession and sale, the possibility that the bull-dozer may have abnormally deteriorated during that period, as indicated by the discrepancy in descriptions of its con-dition and estimated cost of repairs, the failure of appel-lant to notify Grissom or others who had expressed an in-terest in purchasing the equipment and the evidence per-taining to remarks made to Grissom by one who may have been taken to be appellant's manager, we cannot say that there was not a jury question as to appellant's good faith and the commercial reasonableness of every aspect of the disposition of this collateral.

Appellant argues that the circuit judge erred in not granting its motion for new trial because the verdict was against the preponderance of the evidence. Since we find substantial evidence to support the verdict, we cannot re-

verse the denial of this motion. *Brady* v. *City of Springdale,* 246 Ark. 1103, 441 S.W. 2d 81.

The judgment is affirmed.